**NATIONAL WILDLIFE FEDERATION,**
Plaintiff,

v.

**Rogers C. B. MORTON, in his official capacity as Secretary, United States Department of the Interior, et al., Defendants.**

**Civ. A. No. 74–1215.**

United States District Court,
District of Columbia.

May 2, 1975.

Oliver A. Houck, Joel T. Thomas, National Wildlife Federation, Washington, D. C., for plaintiff.

William M. Cohen, Land and Natural Resources Div., Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

WILLIAM B. JONES, District Judge.

This is an action challenging regulations of the Bureau of Land Management (hereinafter "BLM") governing the use of off-road vehicles (ORV) on public lands administered by that agency. Jurisdiction is founded upon certain sections of the Administrative Procedure Act, *viz*, 5 U.S.C. §§ 701–706, 28 U.S.C. § 1331(a), and § 1361 of 28 U.S.C.

Plaintiff, National Wildlife Federation, is a nationwide conservation organization incorporated in 1939 under the laws of the District of Columbia.

Defendant Rogers C. B. Morton is the Secretary of the United States Department of Interior (hereinafter "DOI"), an agency of the federal government. As such he has ultimate responsibility for the administration of DOI, the public lands administered by BLM, and the regulations at issue here. Defendant Jack O. Horton is Assistant Secretary of Interior for Land and Water Resources. As such, he is responsible for the supervision of BLM. Defendant Curtis J. Berklund is the Director of BLM, a federal agency within DOI, and is directly responsible for the administration of the public lands under the jurisdiction of BLM. Defendant James G. Watt is the Director of the Bureau of Outdoor Recreation (hereinafter "BOR"), a federal agency within DOI. As such he is responsible for the DOI's draft and final environmental impact statements, prepared by his predecessor and subordinates at BOR, covering the regulations here in issue.

## I. BACKGROUND

On February 8, 1972, the President, noting that the widespread and rapidly increasing use of off-road vehicles "— often for legitimate purposes but also in frequent conflict with wise land and resource management practices, environmental values, and other types of recreational activity—has demonstrated the need for a unified Federal policy toward the use of such vehicles on the public land," issued Executive Order 11644. 3 C.F.R. p. 332 (1974). The Order directs various "agency heads" (defined to include the Secretary of Interior) to create an administrative framework within which designation of the "specific areas and trails on public lands on which the use of off-road vehicles may be permitted, and areas in which the use of off-road vehicles may not be permitted" would be made, and to set a date by which such designations shall be completed. The Order sets forth various environmental criteria to be employed in determining designations and further requires each agency head to en-

sure adequate opportunity for public participation both in the promulgation of the regulations and in the actual designation of areas and trails.

On April 15, 1974, land designation regulations were issued for public lands under the administration of BLM. 39 Fed.Reg. 13612 (April 15, 1974). These regulations not only prescribed the procedure and criteria to be employed in designating areas and trails; they went one step further, declaring that all public land not restricted or closed to ORV use "remain open to off-road vehicle use and are hereby designated as open use areas and trails except that restrictions and closures regarding the use of public lands that result from authority other than part 6290 shall not be affected by the open use designation of this paragraph." 43 C.F.R. § 6292.2(a) (1974).

Plaintiff alleges that these regulations fail to meet the requirements of Executive Order 11644 in the following respects:

(a) The regulations designate all BLM administered land (with the exception of those few areas previously closed or restricted) as open to off-road vehicle use without regard to the criteria for evaluating these lands prescribed by Executive Order 11644;

(b) The regulations fail to provide for public participation in the designation of BLM administered lands as required by Executive Order 11644;

(c) The regulations fail to set a date for completing the designation of BLM administered lands under the criteria of Executive Order 11644;

(d) The regulations fail to require that all BLM administered lands be evaluated for suitability for off-road vehicle use under the Executive Order's criteria;

(e) The regulations fail to adopt the specific criteria for evaluating BLM administered lands prescribed by Executive Order 11644.

Complaint, para. 13. In addition, plaintiff alleges that the regulations and their environmental impact statement fail to

comply with both substantive and procedural requirements of the National Environmental Policy Act of 1969 (NEPA). 42 U.S.C. § 4321 et seq.

Plaintiff seeks: (1) a declaration that the regulations governing the use of off-road vehicles on public lands under the administration of BLM fail to meet the requirements of Executive Order No. 11644 and Section 102(1) of NEPA; (2) a declaration that these regulations were promulgated without due consideration of alternatives as required by Sections 102(2)(C)(iii) and 102(2)(D) of NEPA; and (3) an order directing the defendants to issue, after consideration of alternatives as required by NEPA, regulations which meet the requirements of Executive Order 11644 and Section 102(1) of NEPA.

The matter is presently before the Court on cross-motions for summary judgment on these issues. In addition, plaintiff's standing to bring this action has been challenged. Being a threshold issue, this final question will be resolved initially.

## II. STANDING

In Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), the Supreme Court articulated a three-pronged test for standing in actions challenging administrative actions. The first hurdle is the "case or controversy" test of "whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise." Association of Data Processing Service Organizations, Inc. v. Camp, supra, 397 U.S. at 152, 90 S.Ct. at 829. The second test is "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Id. at 153, 90 S.Ct. at 831. The final question is whether judicial review of the administrative action has been precluded by express statutory language.[1] See also Arnold Tours, Inc. v. Camp, 400 U.S. 45, 91 S.Ct. 158, 27 L.Ed.2d 179 (1970); Higgenbotham v. Barrett, 473 F.2d 745 (5th Cir. 1973); Constructores Civiles de Centroamerica, (CONCICA) v. Hannah, 148 U.S.App. D.C. 159, 459 F.2d 1183 (1972). Defendants herein direct their arguments to the first prong of this test, asserting that plaintiff does not have standing because it cannot demonstrate "injury in fact." [2]

Discussing the requirement of "injury in fact" in Sierra Club v. Morton, 405 U.S. 727, 738, 92 S.Ct. 1361, 1367, 31 L.Ed.2d 636 (1972), the Supreme Court stated:

> The trend of cases arising under the APA and other statutes authorizing judicial review of federal agency actions has been toward recognizing that injuries other than economic harm are sufficient to bring a person within the meaning of the statutory language and toward discarding the notion that an injury that is widely shared is *ipso facto* not an injury sufficient to provide the basis for judicial review. We noted this development with approval in *Data Processing*, 397 U.S. at 154, 90 S.Ct. at 830, in saying that the in-

---

1. The Administrative Procedure Act provides that provisions of that Act authorizing judicial review apply "except to the extent that— (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

2. With respect to the second prong of the test, it is clear that the environmental interest that plaintiff seeks to protect is well within the "zone of interest" protected by NEPA.

*See* Minnesota Public Interest Research Group v. Butz, 498 F.2d 1314, 1324 (8th Cir. 1974) (en banc); *cf.* United States v. SCRAP, 412 U.S. 669, 686 n. 13, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) (dicta). As to the final test, defendants have failed to direct the Court's attention to any " 'clear and convincing' indication of legislative intent to withhold judicial review." CONCICA v. Hannah, *supra* 148 U.S.App.D.C. at 162, 459 F. 2d at 1186.

terest alleged to have been injured 'may reflect "aesthetic, conservational, and recreational" as well as economic values.'

It is then noted, however, that "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA." *Id.* at 739, 92 S.Ct. at 1368. Consequently, the Court held that the Sierra Club, which alleged no injury to itself or its members but brought its action to enjoin development in the Mineral Valley of the Sequoia National Forest on the theory of its being a "public" lawsuit, lacked standing absent an allegation of particularized injury.

In United States v. SCRAP, *supra*, an action challenging certain rail rate increases authorized by the Interstate Commerce Commission on the ground that the Commission had failed to include a detailed environmental impact statement as required by Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), the complaint was fashioned in such a manner as to cure the deficiencies detailed by the Supreme Court in *Sierra Club.* Specifically, plaintiff's complaint alleged "that their members used the forests, streams, mountains, and other resources in the Washington metropolitan area for camping, hiking, fishing, and sightseeing, and that this use was disturbed by the adverse environmental impact caused by the nonuse of recyclable goods brought about by a rate increase on these commodities." United States v. SCRAP, *supra*, 412 U.S. at 685, 93 S.Ct. at 2415. Comparing these allegations with those found in *Sierra Club*, the Court found,

"Here, by contrast, the appellees claimed that the specific and allegedly illegal action of the Commission would directly harm them in their use of the natural resources of the Washington Metropolitan area." *Id.* at 687, 93 S.Ct. at 2416. The Court cautioned:

Of course, pleadings must be something more than an ingenious academic exercise in the conceivable. A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged agency action, not that he can imagine circumstances in which he could be affected by the agency's action. And it is equally clear that the allegations must be true and capable of proof at trial.

*Id.* at 688–689, 93 S.Ct. at 2416. However, it held that the complaint alleged facts sufficient to withstand a motion to dismiss based on lack of standing.[3]

In Minnesota Public Interest Research Group v. Butz, *supra*, a nonprofit corporation sought temporary and permanent injunctive relief against logging in the Boundary Waters Canoe Area (BWCA) of Minnesota until the Forest Service complied with the requirements of NEPA. There, the Eighth Circuit, sitting en banc, stated:

MPIRG has shown that some of its members use the BWCA for wilderness recreational opportunities it affords. It has demonstrated an effect upon wilderness qualities of the BWCA from logging operations. This suffices to show that its members have suffered or will suffer the requisite injury in fact to support standing. MPIRG may represent its injured members in a proceeding for judicial review. Sierra Club v. Morton, 405 U.S. 727, 739, 92 S.Ct. 1361,

---

3. The Court also reaffirmed its holding in *Sierra Club* that merely because many persons share the same injury is not sufficient reason to disqualify from seeking review of an agency's action any person who has in fact suffered injury. Indeed, the Court seemingly broadened its earlier holding noting that "[r]ather than a limited group of persons who used a picturesque valley in California, all persons who utilize the scenic resources of the country, and indeed all who breathe its air, could claim harm similar to that alleged by the environmental groups here." United States v. SCRAP, *supra*, 412 U.S. at 687, 93 S.Ct. at 2416.

31 L.Ed.2d 636 (1972). We therefore agree with the District Court that MPIRG has standing to litigate the questions presented.

498 F.2d at 1324. *See also* Life of the Land v. Brinegar, 485 F.2d 460, 463 n. 2 (9th Cir. 1973), cert. denied, 414 U.S. 1052, 94 S.Ct. 558, 38 L.Ed.2d 341 (1973).

■ The complaint here alleges, in paragraph 2, that many of plaintiff's "individual members and member clubs use and enjoy the land, air, water, historic, archaeological and aesthetic resources of the 452 million acres of public lands administered by BLM." The same paragraph continues: "The widespread and increasing use of off-road vehicles on these lands is in frequent conflict with the use and enjoyment of these lands and resources by NWF's members and member clubs." These allegations are supported by the uncontroverted, sworn statement of Thomas L. Kimball, Executive Vice President of NWF. Affidavit of Thomas L. Kimball, Executive Vice President, National Wildlife Federation, dated November 18, 1974. Alleging and proving, as it has, particularized and direct injury to its members as a result of the specific and allegedly illegal action of the BLM, plaintiff has standing to litigate the issues involved in this action.[4]

## III. DEFENDANTS' REGULATIONS FAIL TO COMPLY WITH THE REQUIREMENTS OF EXECUTIVE ORDER 11644

Section 3(a) of Executive Order 11644, 3 C.F.R. 333 (1974), requires the development and issuance of regulations and administrative instructions which "provide for administrative designation of the *specific* areas and trails on public lands on which the use of off-road vehicles may be permitted, and areas in which the use of off-road vehicles may not be permitted" (emphasis added). "Those regulations shall direct that the designation of such areas and trails will be based upon the protection of the resources of the public lands, promotion of the safety of all users of those lands, and minimization of conflicts among the various uses of those lands." *Id.* The regulations "shall further require" that the designations "shall be in accordance with" three additional criteria which require the minimization of: damage to land resources, harassment of wildlife and disruption of wildlife habitats, and conflicts between ORV use and other existing or proposed recreational uses in contiguous areas. Finally, "areas and trails shall not be located" in specially-protected areas unless "the respective agency head determines that [ORV] use in such locations will not adversely af-

---

4. Defendants' reliance on the Supreme Court's recent holdings in United States v. Richardson, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); Schlesinger v. Reservists Committee to Stop the War, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), and O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), is misplaced. *Richardson* was an action brought by an individual, as a federal taxpayer, seeking a declaration of the unconstitutionality of the Central Intelligence Agency Act provision which permits the CIA to account for its expenditures solely on the certificate of the Director. 50 U.S.C. § 403j(b). *Schlesinger* was a class action brought on behalf, *inter alia*, of all United States citizens and taxpayers against the Secretary of Defense and three Service Secretaries, challenging the Re-serve membership of Members of Congress as violating the Incompatability Clause of Article I, Section 6, Clause 2, of the Constitution. This action clearly is neither a "taxpayer" nor a "citizen" suit. In *Littleton*, plaintiffs sought federal injunctive relief against judicial officers who were allegedly engaged under color of state law in a continuing pattern of conduct consisting of illegal bond-setting, sentencing, and jury-fee practices in criminal cases. Where it could only be speculated whether plaintiffs would be arrested and where plaintiffs did not point to any imminent prosecutions contemplated against them, the Court concluded that the threat of injury was "simply too remote to satisfy the 'case or controversy' requirement and permit adjudication by a federal court." O'Shea v. Littleton, *supra* at 498, 94 S.Ct. at 677.

fect their natural, aesthetic, or scenic values." *Id.*

■ By its regulations, BLM not only details the mechanism by which designation is to be effected; it goes much further, designating as officially open to ORV use all land not otherwise restricted or closed. This blanket designation was done without regard to any of the criteria mandated by the Executive Order. While it might be argued that the various criteria will be employed in making subsequent "restricted" or "closed" designations, the Order manifestly contemplates evaluation of the land not only for purposes of restricting ORV use but also for designation of areas "on which the use of off-road vehicles may be permitted." Exec. Order No. 11644, para. 3(a), 3 C.F.R. 333 (1974). Moreover, the Order speaks of designating "specific areas and trails on public lands" for use or non-use of ORV's. Here, BLM has engaged in wholesale designation unrelated to any specific tract of land.

Defendants justify this action on the ground that it "maintains the status quo while specific designations are made." Defendants' Statement of Points and Authorities in Support of their Motion for Summary Judgment and in Opposition to Plaintiff's Motion (hereinafter "Defendants' Statement"), at 6. In the first place, this assertion ignores the fact that, status quo or not, the Executive Order requires that *all* designations be based upon the criteria set forth therein and the criteria are to be applied to designations of both use and non-use of ORV's.[5] In addition, designation as "open" does not truly maintain the status quo. As plaintiff notes, this designation, being an official governmental act, changes the character of the land use policy, tilting it in favor of ORV use. Future designations will

not be made in the context of applying the required criteria to decide whether specific areas and trails should be opened or closed to ORV use. Instead, authorized officers will be required to employ the criteria in determining whether a specific area or trail's existing "open" status should be *changed* to "closed" or "restricted." This distinction creates a subtle, but nevertheless real, inertial presumption in favor of ORV use.

Instead of evaluating with regard to the environmental criteria mandated by Executive Order 11644 specific areas and trails to determine whether the use of ORV's should be permitted, BLM has engaged in a wholesale, blanket designation of "open" lands. By doing so, it has violated the express requirements of Executive Order 11644.

■ Section 3(b) of Executive Order 11644, 3 C.F.R. 334 (1974), requires that:

The respective agency head shall ensure adequate opportunity for public participation in the promulgation of such regulations and in the designation of areas and trails under this section.

Defendants argue that this requirement has been fulfilled by using normal administrative procedures in promulgating the challenged regulations. The proposed regulations containing the open designation were published in the Federal Register[6] and numerous comments were received in response thereto.[7] In addition, a draft environmental impact statement was prepared and circulated. Finally, defendants argue that future designations or redesignations will provide an opportunity for public participation. 43 C.F.R. § 6292.4(a) (1974).

The public participation to which defendants refer is related to the promul-

---

5. Section 6292.3 of the BLM regulation states that the criteria set forth therein are to be applied only when designations of "restricted" or "closed" are being contemplated. 43 C.F.R. § 6292.3 (1974).

6. 38 Fed.Reg. 4403 (1973).

7. "Nearly half of the comments received made reference to the open designation and of these above 56% favored the open use designation." Defendants' Statement at 6.

gation of the regulation which sets forth the procedure to be employed in designating tracts of public land. This participation is quite distinctive from and may not be equated with that required as a part of the actual designation of specific areas and trails. By designating all otherwise unrestricted land "open" for ORV use, BLM has restricted future public participation in the designation process to a question of whether a specific area or trail's status should be *changed* from "open" to "restricted" or "closed." There will be no opportunity for such participation on the question of whether the land, at the outset, should be designated as "open." With respect to defendants' argument that adequate public participation was provided by comments concerning the regulations, these comments were necessarily directed to the blanket "open" designation of the regulation and not to the designation (as "open" or otherwise) of "specific areas and trails on public lands" as required by the Executive Order.

Thus, "adequate opportunity for public participation . . . in the designation of areas and trails," required by Section 3(b) of Executive Order 11644, has been denied.

■ Section 3(a) of Executive Order 11644, 3 C.F.R. 333 (1974), requires each respective agency head to "develop and issue regulations and administrative instructions, within six months of the date of this order, to provide for administrative designation . . ., and set a date by which such designation of all public lands shall be completed."

It is plaintiff's first argument that the regulations issued by BLM fail to define such a date. However, a careful reading of the above cited language indicates that the date need not be included in the regulations. All that is required is the setting of a date.

Defendants claim that a date was set in the following manner:

The procedures for designation contained in the regulations at 43 C.F.R.

6292.4, 39 Fed.Reg. 13614 (1974), tie the designations, other than emergency designations, to the existing BLM planning system. By press release dated February 9, 1973 (a copy is attached to the Young affidavit), a target date for designating all public lands was set for 1980 when first generation plans for all BLM administered lands (over 450 million acres) are expected to be completed.

Defendants' Statement at 7. The press release, accompanying the draft ORV regulations, reads: "Initial land use plans are expected to be completed for all BLM-administered lands by 1980." Exhibit 4 to Affidavit of Larry R. Young, Outdoor Recreation Planner, Division of Recreation, Bureau of Land Management, Department of Interior (hereinafter "Young Affidavit"), at page 2.

Close examination of this press release reveals no setting of a date "by which such designation of all public lands shall be completed." "Initial land use plans" are not necessarily synonymous with the completion of the public land ORV designation process. Moreover, an expression of "expectation" is precatory, open-ended, and not equatable with setting a date. Finally, the press release technically does not provide a date at all; it provides a target year.

It does not appear that a set date must be included in the regulation. Permitting the disclosure of the date by press release detracts from the permanency of a "set" date, as modifications of that date need not be accompanied by administrative procedures. Nevertheless, even the press release method chosen here is inadequate as it simply fails to "set a date" as required by Section 3(a) of Executive Order 11644.

■ Section 3(a) of Executive Order 11644 further requires the "designation of *all* public lands" (emphasis added). The BLM regulations provide that the authorized officer may initially designate any public lands as restricted or closed to ORV use and may redesignate

any public land open to ORV use at any subsequent time if he or she determines that redesignation is appropriate. 43 C.F.R. § 6292.2(a) and (b) (1974). "[T]o the extent practicable," designation and redesignation are to be made "in conformance with the Bureau of Land Management planning system for the formulation of multiple use management plans," although the authorized officer "may act independently of the planning system if he/she deems emergency action to close or restrict areas and trails is essential to attain the objectives of the regulations . . . ." 43 C.F.R. § 6292.4 (1974).[8]

These regulations do not ensure that all public lands will be evaluated for purposes of designation. Defendants seemingly concede this point at pages 7–8 of their Statement where they state that authorized officers are not restricted to the planning system, that they may take action outside the system to attain the objectives of the ORV regulations,[9] and that some lands are already closed or restricted. Thus, lands already reviewed prior to issuance of BLM's ORV regulations will be evaluated only if the authorized officer chooses to exercise his discretionary authority to redesignate. Land which the authorized officer does not choose to designate or redesignate as closed or restricted may never be evaluated for designation purposes by the "set" date, if at all. This grant of discretionary authority fails to ensure that *all* public lands will be evaluated and designated in accordance with Section 3(a) of the Order.

 Section 3(a) of Executive Order 11644 further requires that the following criteria be employed in making designations:

Those regulations shall direct that the designation of such areas and trails will be based upon the protection of the resources of the public lands, promotion of the safety of all users of those lands, and minimization of conflicts among the various uses of those lands. The regulations shall further require that the designation of such areas and trails shall be in accordance with the following—

(1) Areas and trails shall be located to minimize damage to soil, watershed, vegetation, or other resources of the public lands.

(2) Areas and trails shall be located to minimize harassment of wildlife or significant disruption of wildlife habitats.

(3) Areas and trails shall be located to minimize conflicts between off-road vehicle use and other existing or proposed recreational uses of the same or neighboring public lands, and to ensure the compatibility of such uses with existing conditions in populated areas, taking into account noise and other factors.

(4) Areas and trails shall not be located in officially designated Wilderness Areas or Primitive Areas. Areas and trails shall be located in areas of the National Park system, Natural Areas, or National Wildlife Refuges and Game Ranges only if the respective agency head determines that off-road vehicle use in such locations will not adversely affect their natural, aesthetic, or scenic values.

3 C.F.R. 333–334 (1974).

BLM's regulations set forth the following criteria:

Designations of restricted and closed areas and trails will be based on the following:

(a) The ability of the land and its resources to withstand and sustain off-road vehicle use impacts.

---

8. The BLM planning system was created in 1964 in response to the Classification and Multiple Use Act of 1964, 43 U.S.C. § 1411 et seq. The Bureau's long-range Management Framework Plan was begun in 1969. Young Affidavit at paragraph 5.

9. As noted above, however, this is only permitted in emergencies. 43 C.F.R. § 6292.4 (a), 39 Fed.Reg. 13614 (April 15, 1974).

(b) Consideration of the scenic qualities of the land, and its cultural, ecological, and environmental values.

(c) The need for public use areas for recreation use.

(d) Consideration of off-road vehicle use impacts on other lands, use, and resources.

(e) The potential hazards to public health and safety, other than the normal risks involved in off-road vehicle use.

(f) The existing or potential quality and quantity of recreational experiences available.

(g) Consideration of the need to minimize harassment of wildlife or significant disruption of wildlife habitat.

(h) The furtherance of the purposes and policy of the National Environmental Policy Act of 1969 (42 U.S.C. [§] 4321).

43 C.F.R. § 6292.3 (1974).

A cursory reading of the language of the two excerpts set forth above suggests that BLM has significantly diluted the standards emphatically set forth in Executive Order 11644.[10] A close comparison of the two sets of criteria confirms this impression. For example, where the Executive Order directs that "[a]reas and trails shall be located to minimize damage to soil, watershed, vegetation or other resources of the public lands," the BLM regulations state that designation will be based on "[t]he ability of the land to withstand and sustain off-road vehicle impacts" and "[c]onsideration of the scenic qualities of the land, and its cultural, ecological and environmental values." The Executive Order directs that "[a]reas and trails shall be located to minimize harass-

ment of wildlife or significant disruption of wildlife habitats," while BLM requires only "[c]onsideration of the need to minimize harassment of wildlife or significant disruption of wildlife habitat."

In addition to diluting the criteria detailed in the Executive Order, BLM has added a substantive criteria [11] found nowhere in the Order, much less prescribed as a criterion. The Order does not direct that "in addition to" or "among other" criteria the following will be employed. Instead, it states that designation "will be based upon" and "shall be in accordance with" the delineated standards.

BLM seeks to justify its action on the basis that "the criteria of the Executive Order are applied in a system which considers all uses or potential uses of the public lands and the conflicts between them, including uses not specifically dealt with in the Executive Order such as grazing, mining, etc." Defendants' Statement at 9. Planning system or not, the Executive Order sets forth in unambiguous and mandatory language the criteria that are to be employed in the designation of areas and trails for use or non-use of ORV's. Defendants have not adhered to them in their regulations.

█ The Court thus concludes that defendants' regulations fail to comply with numerous requirements of Executive Order 11644. Specifically, by designating all otherwise unrestricted public lands as "open" use areas, defendants have engaged in designation without evaluation in violation of the Orders requirement that all designations be based on specific criteria. In addition, this blanket "open" designation was made without the public participation required by the Order. Furthermore, defendants

---

10. The word "shall" is repeatedly employed both in defining the various standards and in requiring their inclusion in the regulations. Absent a readily apparent intent to the contrary, the word "shall" is ordinarily construed to be imperative or mandatory in character. See Brown v. Hecht Co., 78 U.S.App.D.C. 98, 137 F.2d 689 (1944), rev'd on other grounds

sub nom., Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944); Ballou v. Kemp, 68 U.S.App.D.C. 7, 92 F.2d 556 (1937).

11. "The need for public use areas for recreation use." 43 C.F.R. § 6292.3(c) (1974).

have failed both to set a date by which designation shall be completed and to ensure the designation of *all* public lands. Finally, the Court finds that the regulations' criteria for designation fail to conform with those mandated by Executive Order 11644.[12]

## IV. DEFENDANTS VIOLATED THE PROCEDURAL REQUIREMENTS OF NEPA BY FAILING TO CONSIDER REASONABLE ALTERNATIVES TO THE PROPOSED ACTION

Section 102(2)(C) of NEPA, 42 U.S.C. § 4332(2)(C), provides:

all agencies of the Federal Government shall—

\* \* \* \* \* \*

(C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

\* \* \* \* \* \*

(iii) alternatives to the proposed action;

\* \* \* \* \* \*

Section 102(2)(D) of the Act, 42 U.S.C. § 4332(2)(D), requires all Federal agencies to "study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources."

 The procedural duties of Section 102 must be fulfilled to the "fullest extent possible." 42 U.S.C. § 4332. This requirement "sets a high standard for

---

12. Plaintiff has also alleged in its complaint and argued here that BLM's blanket "open" designation of all otherwise unrestricted public lands under its jurisdiction violates certain substantive policies of Section 101(b), taken with Section 102(1) of NEPA. 42 U.S.C. §§ 4331(b), 4332(1).

The federal circuits appear split on the question of whether these NEPA provisions constitute enforceable standards governing the substance of an agency decision. A majority of those considering the question, including the District of Columbia Circuit, have concluded that NEPA does indeed establish judicially reviewable, substantive guidelines. Environmental Defense Fund, Inc. v. Corps of Engineers, 492 F.2d 1123, 1139 (5th Cir. 1974) ; Sierra Club v. Froehlke, 486 F.2d 946, 951–952 (7th Cir. 1973) ; Conservation Council of North Carolina v. Froehlke, 473 F.2d 664, 665 (4th Cir. 1973) ; Environmental Defense Fund, Inc. v. Froehlke, 473 F.2d 346, 352–353 (8th Cir. 1972) ; Environmental Defense Fund v. Corps of Engineers, 470 F.2d 289, 298 (8th Cir. 1972), cert. denied, 412 U.S. 931, 93 S.Ct. 2749, 37 L. Ed.2d 160 (1973), Calvert Cliffs' Coordinating Comm., Inc. v. Atomic Energy Commission, 146 U.S.App.D.C. 33, 39, 449 F.2d 1109, 1115 (1971). The Ninth and Tenth Circuits have reached an opposite result, discerning merely procedural requirements inherent in NEPA. Environmental Defense Fund, Inc. v. Armstrong, 487 F.2d 814, 822 n. 13 (9th Cir. 1973), cert. denied, 416 U.S. 974, 94 S. Ct. 2002, 40 L.Ed.2d 564 (1974) ; Jicarilla Apache Tribe of Indians v. Morton, 471 F.2d 1275, 1280 (9th Cir. 1973) ; National Helium Corp. v. Morton, 455 F.2d 650, 656 (10th Cir. 1971) ; Upper Pecos Ass'n v. Stans, 452 F.2d 1233, 1236 (10th Cir. 1971), vacated and remanded on other grounds, 409 U.S. 1021, 93 S.Ct. 458, 34 L.Ed.2d 313 (1972). In reviewing an agency decision a Court cannot "reverse a substantive decision on its merits, under Section 101, unless it be shown that the actual balance of costs and benefits that was struck was arbitrary or clearly gave insufficient weight to environmental value." Calvert Cliffs' Coordinating Comm., Inc. v. Atomic Energy Commission, *supra*; *accord* Environmental Defense Fund, Inc. v. Corps of Engineers, *supra*, 470 F.2d at 300.

While recognizing that a cogent argument may be made to the effect that BLM's blanket "open" designation without application of environmental standards to specific areas and trials was contrary to several substantive policies set forth in Section 101(b) of NEPA, the Court, having found this designation to suffer from the more fundamental flaw of contravening the directives of Executive Order 11644, deems it unnecessary to undertake at this time such a review of defendants' compliance with the substantive policies of NEPA. This conclusion, of course, does not excuse defendants from complying with the substantive requirements of NEPA in their promulgation of new regulations which comport with Executive Order 11644.

the agencies, a standard which must be rigorously enforced by the reviewing courts." Calvert Cliffs' Coordinating Comm., Inc. v. Atomic Energy Commission, 146 U.S.App.D.C. at 38, 449 F.2d at 1114.

A "rule of reason" has been. found to be implicit in NEPA's requirement that an environmental impact statement describe and discuss alternatives. Life of the Land v. Brinegar, 485 F.2d 460, 472 (9th Cir. 1973); Natural Resources Defense Council, Inc. v. Morton, 148 U.S.App.D.C. 5, 15, 458 F.2d 827, 837 (1972). Thus, a statement need not "explore every extreme possibility which might be conjectured," [13] nor must it provide a detailed discussion of the effects of alternatives "when these effects cannot be readily ascertained and the alternatives are deemed only remote and speculative possibilities." [14] However, NEPA does require consideration of reasonable alternatives "as they exist and are likely to exist." Carolina Environmental Study Group v. United States, *supra.*

The Final Environmental Statement here consists of twenty-three, single-spaced, typewritten pages excluding tables of contents and appendices. Of that, approximately four pages are devoted to describing .and discussing alternatives to the proposed action which affects over 452 million acres of land under the stewardship of BLM. Four alternatives are listed:

(A) No action.

(B) Close all Department of Interior lands to ORV use.

(C) Open all Department of Interior lands to ORV use.

(D) Delegate to bureaus the authority to implement the Executive Order without secretarial review.

Discussion is generally limited to broad assertions of fact unsupported by specific data.

All four "alternatives" suffer the common flaw of being contrary to Executive Order 11644. Alternatives "A" and "D" violate Section 3(a) of the Order which directs the Secretary of Interior to develop and issue regulations and administrative instructions to provide for designation with respect to public lands under his custody and control.

Alternatives "B" and "C" share several of the infirmities discussed in Part III in reference to the action actually taken by BLM, e. g., failure to apply specific criteria to specific areas and trails in making initial designations; failure to ensure public participation in the initial designation decision making process. One of plaintiff's own suggested alternatives, "close BLM lands to off-road vehicles pending a review of specific areas, with public participation, under the criteria prescribed in the Executive Order," [15] and the variations thereof,[16] appear deficient for the same reasons.

Other alternatives which are both compatible .with Executive Order 11644 and reasonable would seem to exist. These could consist of several variables. At the very least, BLM lands could be left undesignated pending evaluation and designation. A variable of time could be considered, i. e., expedition of the review process. A variable keyed to the areas themselves could be infused, i. e., requiring consideration on a priority basis linked to the sensitivity of various areas to ORV use (both year-round and at particular seasons). Another variable could be tied to ORV usage—considering first those lands most widely and heavily used by off-road vehicles. Numerous combinations of these variables are pos-

---

13. Carolina Environmental Study Group v. United States, 166 U.S.App.D.C. 416, 510 F. 2d 796, 801 (1975).

14. Natural Resources Defense Council, Inc. v. Morton, 148 U.S.App.D.C. at 16, 458 F.2d at 838.

15. Plaintiff's Memorandum of Points and Authorities in Support of its Motion for Summary Judgment, at 21.

16. *Id.*; Comment No. 93 to Final Environmental Statement; Comment of the Department of Administration of the State of Florida, No. 103 to FES.

sible. Other variables or completely different reasonable alternatives probably exist.

The Court does not presume to dictate those alternatives which should or must be considered. It does find, however, that defendants have failed to study, develop and describe appropriate and reasonable alternatives to the recommended course of action and include those alternatives in their Final Environmental Statement. That statement, therefore, fails to comport with Section 102 of NEPA, 42 U.S.C. § 4332.

## ORDER

Upon consideration of plaintiff's motion, and defendants' cross-motion, for summary judgment, the memoranda of points and authorities submitted by respective counsel in support and opposition thereto, as well as the affidavits filed by the parties, and after oral argument in open court on the motions, and in accordance with the foregoing memorandum, it is this 2nd day of May 1975,

Ordered, that defendants' regulations governing the use of off-road vehicles on public lands under the administration of the Bureau of Land Management, 43 C.F.R. § 6290 et seq. (1974), are hereby declared to be in violation of Executive Order 11644, 3 C.F.R. p. 332 et seq. (1974);

and it is

Further ordered, that defendants' regulations are declared to have been promulgated without consideration of alternatives as required by Section 102(2)(C)(iii) and 102(2)(D) of the National Environmental Policy Act, 42 U.S.C. §§ 4332(2)(C)(iii) and 4332(2)(D); and it is

Further ordered, that defendants are directed to issue, after consideration of alternatives as required by the National Environmental Policy Act, regulations which meet the requirements of Executive Order 11644.