AMERICAN MOTORCYCLIST ASSOCI-
ATION, etc., et al., Plaintiffs,

v.

James G. WATT, etc., et al., Defendants.

COUNTY OF INYO, etc., Plaintiff,

v.

James G. WATT, etc., et al., Defendants.

NATIONAL OUTDOOR COALITION,
Plaintiff,

v.

James G. WATT, etc., et al., Defendants.

CALIFORNIA NATIVE PLANT SOCIE-
TY, etc., et al., Plaintiffs,

v.

James G. WATT, etc., et al., Defendants.

SIERRA CLUB, etc., et al., Plaintiffs,

v.

James G. WATT, Defendants.

Nos. CV 80–5561 AWT, 80–5599 AWT,
80–5629 AWT, 81–489 AWT and
81–1445 AWT.

United States District Court,
C. D. California.

July 1, 1982.

Robert E. Hinerfeld, Murphy, Thornton, Hinerfeld & Cahill, Los Angeles, Cal., for American Motorcyclist Ass'n.

Dennis L. Myers, County Counsel, Independence, Cal., for County of Inyo.

Karen C. Patterson, Kinsella, Boesch, Fujikawa & Towle, Los Angeles, Cal., for Nat. Outdoor Coalition.

Laurens H. Silver, Sierra Club Legal Defense Fund, Inc., Mark I. Weinberger, Shute, Mihaly & Weinberger, San Francisco, Cal., for California Native Plant Society, et al.

Stephen S. Trott, U. S. Atty., Frederick M. Brosio, Asst. U. S. Atty., Chief, Civil Division, James R. Arnold, Asst. U. S. Atty., Los Angeles, Cal., for James G. Watt, et al.; Robert E. Conover, Field Sol., Dept. of the Interior, of counsel.

## MEMORANDUM OPINION

TASHIMA, District Judge.

This matter is before the Court on cross-motions for partial summary judgment by plaintiffs and certain of the defendants in one of the above-captioned cases: *California Native Plant Society v. Watt*, No. CV 81–489 AWT.[1]  *California Native Plant*, like each of these consolidated cases, calls into question the validity of the California Desert Conservation Area Plan (the "Plan"), which was prepared by the Bureau of Land Management ("BLM") pursuant to Section 601 of the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. § 1781. The Plan, and the procedure by which it was developed, were discussed extensively by this Court in an earlier opinion. *American Motorcyclist Ass'n v. Watt*, 534 F.Supp. 923 (C.D.Cal.1981) (denying request for preliminary injunctive relief by plaintiffs in certain of the other cases).[2] In the interest of brevity, that discussion will not be repeated here.

The primary issue raised in the present motions relates to the "Motorized-Vehicle Access" element (the "MVA element") of the Plan. That element sets forth, among other things, restrictions on motorized vehicle use in those portions of the California Desert Conservation Area ("CDCA") designated by the Plan as "Class L" areas. In particular, the MVA element specifies that motorized vehicles will be allowed only on "approved routes of travel" in Class L areas, and sets forth specific criteria by which such routes are to be selected.[3]

Plaintiffs seek a declaration that these route selection criteria for Class L areas are inconsistent with the provisions of 43 C.F.R. § 8342.1, a BLM regulation promulgated pursuant to the authority of FLPMA and certain other statutes,[4] and with Exec. Order No. 11,644 ("E.O. 11,644"), 3 C.F.R. § 332 (1974), as amended by Exec. Order No. 11,989 ("E.O. 11,989"), 3 C.F.R. § 120 (1978). Plaintiffs further request that the Court enjoin federal defendants (James G. Watt, Secretary of the Interior, and various officials of the BLM) from approving routes of travel using the criteria contained in the Plan, and ask for a writ of mandate compelling those defendants to revise the Plan so as to make it consistent with applicable executive orders and regulations.

In their cross-motion for summary judgment, federal defendants ask for a declaration that the challenged route approval criteria are consistent with applicable law.[5]

---

1. In their amended complaint, plaintiffs alleged three causes of action. The cross-motions presently before the Court address only the second cause of action. However, at oral argument on these motions, plaintiffs voluntarily dismissed the first and third causes of action, with approval of the Court. Consequently, the disposition of the cross-motions for summary judgment on plaintiffs' second cause of action will dispose of this entire case.

2. The earlier opinion is hereinafter cited as "*AMA* at 937."

3. As will be discussed below, the Recreation element of the Plan incorporates these same criteria by reference.

4. 43 C.F.R. § 8342.1 purports to be issued under FLPMA, 43 U.S.C. § 1701 *et seq.*; the Taylor Grazing Act, 43 U.S.C. § 315(a); the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*; the Wild and Scenic Rivers Act of 1973, 16 U.S.C. § 1281(c); the Act of September 15, 1960 (the "Sikes Act"), as amended, 16 U.S.C. § 670 *et seq.*; the Land and Water Conservation Fund Act, 16 U.S.C. § 460 1–6a; the Na-

tional Trails System Act, 16 U.S.C. § 1241 *et seq.*; and E.O. 11,644, 3 C.F.R. § 332 (1974), as amended by E.O. 11,989, 3 C.F.R. § 120 (1978).

5. Defendant Score International, Inc., filed a memorandum in opposition to plaintiffs' motion and in support of the cross-motion by federal defendants. Plaintiffs in two of the consolidated actions, County of Inyo, American Motorcyclist Association, and Sports Committee, District 37, A.M.A., Inc. (the latter two parties will hereinafter be referred to collectively as "AMA"), also filed briefs. County of Inyo and AMA opposed both the motion by plaintiffs in *California Native Plant* and the cross-motion by federal defendants, primarily on the grounds of ripeness and failure to exhaust administrative remedies (both of which are discussed below), and on the theory that this Court should not rule on the validity of an isolated element of the Plan when the entire Plan is under attack in the consolidated actions (see footnote 11, *post*).

After hearing argument and reviewing the extensive record pertinent to these motions, I have concluded, for the reasons hereinafter stated, that plaintiffs are entitled to summary judgment, and that limited declaratory and injunctive relief should be granted. In essence, both 43 C.F.R. § 8342.1 and E.O. 11,644 require that routes for off-road vehicles ("ORVs") be selected so as to minimize adverse environmental effects. As will be elaborated below, I conclude that the criteria in the Plan are inconsistent with 43 C.F.R. § 8342.1, in that they allow for route approval without minimization of adverse environmental impacts. Under these circumstances, it is unnecessary to determine whether the provisions of E.O. 11,644 would also justify granting the relief sought by plaintiffs.[6]

## DISCUSSION

### I.  STANDING

The plaintiffs in this action are the California Native Plant Society, the Sierra Club, the Desert Tortoise Council, the San Bernardino Valley Audubon Society and the Wilderness Society. Since the issue has not previously been determined as to these plaintiffs, as a threshold matter, it is necessary to determine which, if any, of these plaintiffs have standing to challenge the route designation criteria for Class L areas contained in the Plan. The principles applicable to an analysis of that issue, in the context of this case, are fully discussed in *AMA* at 930–33.[7]

■ With the exception of the Desert Tortoise Council, each of the plaintiffs has demonstrated "injury in fact." Each has shown that application of the challenged motorized-vehicle route designation standards will cause environmental injury to Class L areas, that its members use the affected portions of the desert for recreation or study and that their use of the desert for those purposes would be impaired if the route approval criteria contained in the Plan were put into effect. Furthermore, plaintiffs have shown that the relief they seek, *i.e.*, compliance with 43 C.F.R. § 8342.1 and E.O. 11,644, would redress their injury by reducing environmental impacts and the resultant impairment of recreational values.

■ Plaintiff Desert Tortoise Council, however, has asserted only that its members "are concerned over impacts on desert tortoise habitat" due to threatened route designations using the approval criteria contained in the Plan and that "[t]he loss of desert habitat will severely impair the ability of Desert Tortoise Council members to enjoy the resources of the California desert." (Decl. of David W. Stevens, filed Nov. 20, 1981.) The organization has made no showing that its members presently use the lands in Class L areas, or that they have specific plans to do so in the near future. In short, the Desert Tortoise Council has failed to show that it or its members have "personally suffered some actual or threatened injury" as a result of the conduct of defendants. As the Supreme Court made clear in *Sierra Club v. Morton*, 405 U.S. 727, 738–40, 92 S.Ct. 1361, 1367–68, 31 L.Ed.2d 636 (1972), an organizational plaintiff such as the Desert Tortoise Council must demonstrate "individualized injury" to itself or its

---

6.  I conclude below that plaintiff Desert Tortoise Council lacks standing to pursue this action. Accordingly, relief will be granted only in favor of the other plaintiffs, and the action will be dismissed as to the Desert Tortoise Council for lack of subject matter jurisdiction.

7.  The constitutional dimensions of the principles associated with the "injury in fact" requirement of standing were recently clarified by the Supreme Court in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, —— U.S. ——, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982):

"[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant ...' and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision...' [citations omitted]."

*Accord, Legal Aid Soc'y v. Brennan*, 608 F.2d 1319, 1332–33 (9th Cir. 1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980).

members, rather than a mere "organizational interest in the problem." Since the Desert Tortoise Council has failed to show injury in fact of the type necessary to satisfy the case or controversy requirement of Art. III, it must be dismissed for lack of subject matter jurisdiction.

Plaintiffs have asserted environmental and recreational interests which are clearly within the "zone of interests" of FLPMA, and 43 C.F.R. § 8342.1 (promulgated thereunder). See AMA at 930–33. In addition, each of the plaintiff organizations, with the exception of the Desert Tortoise Council, has made the showing necessary to establish standing to assert the claims of its members. Id. Accordingly, the Court concludes that each of the plaintiffs, except the Desert Tortoise Council, has established standing to assert violations of 43 C.F.R. § 8342.1. Since, as discussed below, plaintiffs' claim under this regulation is sufficient to establish their case on the merits, it is unnecessary to determine whether plaintiffs have standing to assert violations of E.O. 11,644.

## II. RIPENESS

Federal defendants contend that this case does not present a justiciable controversy because the route approval criteria contained in the Plan have not yet been applied.[8] This contention must be rejected for two reasons.

■ First, plaintiffs have shown that on February 8, 1982, the Barstow office of the BLM approved a route of travel for a 400-vehicle "hare and hound" motorcycle race, to be run on February 14, 1982. Pursuant to the Recreation element of the Plan (p. 84), approval of one-time competitive off-road vehicle events is subject, insofar as Class L areas are involved, to compliance with the permanent route selection criteria challenged in this case. Furthermore, it appears from the Environmental Assessment prepared by the BLM for use in considering the application for a race permit and from the Decision Record and Rationale issued by the BLM, that the agency did not apply the route approval criteria in the Plan in a manner consistent with 43 C.F.R. § 8342.1. Instead of ensuring "minimization" of environmental impacts as is required by § 8342.1, the BLM appears to have demanded only avoidance of "considerable adverse effects." The "considerable adverse effects" standard might have been taken either from E.O. 11,989, 3 C.F.R. § 120 (1978), or from 43 C.F.R. § 8341.2 (as distinguished from § 8342.1), both of which require that an ORV route be closed if "considerable adverse effects" are shown. This closure standard cannot properly be applied to initial route approval. Thus, it appears that the BLM is already applying the route selection criteria challenged in this action and that it is doing so in a manner inconsistent with 43 C.F.R. § 8342.-1. Plaintiffs have, therefore, established that a present controversy exists which makes this case ripe for review.

■ Second, even if plaintiffs had not shown an instance of actual application of the challenged route selection criteria, this case satisfies the standards governing the availability of judicial review for newly promulgated administrative rules which are not yet being enforced or applied. Under the test announced by the Supreme Court in Abbott Laboratories v. Gardner, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), the propriety of judicial review in such cases depends primarily on two factors: (1) fitness of the issues for judicial decision (e.g., is the agency action final and is the question a legal as opposed to a factual one); and (2) hardship to the parties of withholding court consideration. Cf. Pacific Legal Found. v. State Energy Resources Conservation & Dev. Comm'n, 659 F.2d 903, 915 (9th Cir. 1981) (applying Abbott Labs test to determine reviewability of statute). Plaintiffs have satisfied both prongs of this test. The issue they raise is legal in nature, and relates to agency rules which were promulgated in a relatively formal manner and with which compliance is

---

**8.** County of Inyo and AMA also assert this argument.

expected;[9] thus, it is fit for judicial decision. Since potentially irreparable environmental harm is threatened by application of these criteria, it would impose substantial hardship on plaintiffs and would disserve the public interest[10] to postpone review until after use of a given route has begun. Similarly, it would impose a substantial burden on both parties to require plaintiffs to challenge each permanent or one-time competitive event route approval as it is granted by the BLM. The Plan criteria are intended for general application, and bind the discretion of BLM officials in making route selections. Accordingly, I conclude that the issue raised by plaintiffs regarding these criteria is ripe for judicial review.[11]

### III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Although each of the plaintiffs filed comments on the Proposed Plan and Final Environmental Impact Statement during the appropriate comment period, it appears that only the Sierra Club commented specifically on the route designation criteria for Class L areas. (Decl. of Wesley T. Chambers, Exh. 12, Fed.Defts.' Memo. of Points and Auth., filed Jan. 25, 1982.) Federal defendants argue that those plaintiffs who failed to comment specifically on the route approval criteria have "failed to exhaust their administrative remedies," and therefore

should be barred from obtaining judicial review.

Viewed in the strict sense, the exhaustion of remedies doctrine does not precisely fit this case, since federal defendants have made no showing that a "remedy" for correcting the illegality of the challenged criteria exists at the agency level. However, there is a corollary to the general exhaustion rule, expressed in a line of cases not cited by the parties, which more closely parallels federal defendants' argument. Generally, those cases state that a party may not raise on judicial review a point not asserted in prior administrative proceedings. *See, e.g., Director, Office of Workers' Compensation Programs v. North American Coal Corp.*, 626 F.2d 1137, 1143 (3d Cir. 1980) ("It is generally recognized that under the doctrine of exhaustion of administrative remedies a court should not consider an argument which has not been raised in the agency proceedings which preceded the appeal, absent unusual circumstances."); *Getty Oil Co. v. Andrus*, 607 F.2d 253, 255–56 (9th Cir. 1979).

The rule barring assertion of points not previously raised before the agency makes considerable sense where, as in the cases cited above, the prior administrative proceeding was adjudicatory in nature, at least in the sense that identifiable parties

9. The Plan states, at p. 11:

"This general plan is at the top of a heirarchy and it provides the framework for subsequent plans for specific resources and uses, and for development of site-specific programs or project actions, and it is responsive to specific land-use requests . . . ."

Furthermore, in introducing the approval criteria challenged in the present action, the Plan states, at p. 91, that: "Decisions on approval of vehicle routes for Class L *will be based* on an analysis of each situation, using the following decision criteria." [Emphasis added].

10. The public interest would be disserved both by the potential for irreparable damage to desert resources, and by the substantial expense likely to be incurred if the BLM proceeds with an elaborate route approval process using criteria which are later found to be invalid.

11. County of Inyo and AMA urge the Court to withhold ruling on the merits of plaintiffs' claim, in light of the fact that the Plan is challenged, in its entirety, in the actions brought by them. However, County of Inyo and AMA have cited no authority for this argument and the Court concludes it must be rejected. As noted above, plaintiffs have presented a claim which is ripe for judicial review and which they have standing to assert. The possibility that other portions of the Plan might be invalidated in a consolidated action is not enough to remove the threat of legally cognizable harm to these plaintiffs. Furthermore, federal defendants have themselves sought, by way of their cross-motion for summary judgment, a ruling on the merits (in the event this Court decided that plaintiffs claims were ripe for review under traditional ripeness doctrines). Plaintiffs in the present action should be permitted to frame their claim for relief as broadly or as narrowly as their own interests dictate; they should not be forced to challenge the entire Plan in order to seek the limited relief they desire.

were involved or application of a rule to specific individuals was considered. However, it would be inappropriate to apply this rule to notice and comment rule-making of the type involved in the present case. This point was made forcefully in *Dobbs v. Train*, 409 F.Supp. 432, 434–35 (N.D.Ga. 1975), *aff'd sub nom. Dobbs v. Costle*, 559 F.2d 946 (5th Cir. 1977):

> "While the defendants entitle their objection as a failure to exhaust administrative remedies, the basis of their objection is more an estoppel-type argument. The defendants contend that because the plaintiffs herein did not participate in the rule-making process leading to the adoption of the agency definition, they may not now challenge that definition in this Court. This argument is without merit.
>
> "The fallacy of this argument can best be seen by assuming its validity. If the failure to participate in the rulemaking process estopped a litigant from bringing suit in Court challenging the rule adopted, then the vast majority of potential litigants could not sue. All persons would have to be on guard to insure that some agency did not promulgate some rule that might someday deny them a benefit to which they otherwise would have been entitled. As the agency herein noted, no one filed any comments to the proposed definition here in question. If one accepts the defendants' argument, then there is no one who may now challenge the definition adopted by the agen-

cy. That is, since no one participated in the rulemaking process, the rule would now be immune from attack. Such a result is neither desirable, nor is it the law."

*Accord, City of Seabrook v. EPA*, 659 F.2d 1349, 1360–61 (5th Cir. 1981) ("we agree with Judge Hill [in *Dobbs*] that courts should not generally hold a petitioner estopped from objecting to an agency rule because his specific objection was not made during the 'notice and comment' period"). *But see Portland Cement Ass'n v. Ruckelshaus*, 486 F.2d 375, 394–95 (D.C.Cir.1973), *cert. denied*, 417 U.S. 921, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974) (dictum suggesting cement manufacturer could be barred from asserting point not raised during comment period on proposed emission standard).

■ I find the reasoning in *Dobbs* and *City of Seabrook* persuasive; accordingly, I hold that those plaintiffs who failed to comment specifically on the route approval criteria challenged here are not barred from obtaining review of those criteria in this Court.

## IV. VALIDITY OF ROUTE SELECTION CRITERIA

■ E.O. 11,644 was promulgated by President Nixon on February 9, 1972. That executive order directed various agency heads, including the Secretary of the Interior, to develop and issue regulations governing the designation of specific areas and trails on public lands for use by off-road vehicles.[12]

12. E.O. 11,644 stated, in relevant part:

"Each respective agency head shall develop and issue regulations and administrative instructions, within six months of the date of this order, to provide for administrative designation of the specific areas and trails on public lands on which the use of off-road vehicles may be permitted, and areas in which the use of off-road vehicles may not be permitted, and set a date by which such designation of all public lands shall be completed. *Those regulations shall direct that the designation of such areas and trails will be based upon the protection of the resources of the public lands, promotion of the safety of all users of those lands, and minimization of conflicts among the various uses of those

lands. The regulations shall further require that the designation of such areas and trails shall be in accordance with the following—

"(1) Areas and trails shall be located to minimize damage to soil, watershed, vegetation, or other resources of the public lands.

"(2) Areas and trails shall be located to minimize harassment of wildlife or significant disruption of wildlife habitats.

"(3) Areas and trails shall be located to minimize conflicts between off-road vehicles use and other existing or proposed recreational uses of the same or neighboring public lands, and to ensure the compatibility of such uses with existing conditions in populated areas, taking into account noise and other factors.

In April of 1974, the BLM issued regulations intended to implement E.O. 11,644. *See* 39 Fed.Reg. 13,612–15 (April 15, 1974). Those regulations provided that appropriate officers could, pursuant to certain specified criteria, designate public lands as restricted or closed to ORV use. The regulations further provided that "[p]ublic lands not so designated shall remain open to off-road vehicle use and are hereby designated as open areas and trails" unless restricted by other authority. *Id.* at 13,614.

The 1974 regulations were promptly challenged in federal court, and were declared invalid in *National Wildlife Fed'n v. Morton*, 393 F.Supp. 1286 (D.D.C.1975). The district judge in that case based his decision on several grounds. Included among them were his determinations: (1) that the "open" until "closed" approach of the 1974 regulations created an "inertial presumption" in favor of ORV use which was inconsistent with E.O. 11,644; and (2) that the BLM, in specifying criteria for designation of ORV areas and trails, had "significantly diluted the standards emphatically set forth in Executive Order 11644" and, in addition, had "added a substantive criteria [sic] found nowhere in the Order, much less prescribed as a criterion." *Id.* at 1292, 1295.

In response to *National Wildlife*, the BLM eventually promulgated regulations, pursuant to the authority of FLPMA as well as a number of other statutes,[13] which set forth route designation criteria nearly identical to those set forth in E.O. 11,644. *See* 43 Fed.Reg. 40,734 (September 12, 1978).[14] Those regulations provide as follows:

"The authorized officer shall designate all public lands as either open, limited, or closed to off-road vehicles. All designations shall be based on the protection of the resources of the public lands, the promotion of the safety of all the users of the public lands, and the *minimization of conflicts* among various uses of the public lands; and in accordance with the following criteria:

"(a) Areas and trails shall be located to *minimize damage* to soil, watershed, vegetation, air, or other resources of the public lands, and to prevent impairment of wilderness suitability.

"(b) Areas and trails shall be located to *minimize harassment* of wildlife or significant disruption of wildlife habitats. Special attention will be given to protect endangered or threatened species and their habitats.

"(c) Areas and trails shall be located to *minimize conflicts between* off-road vehicle use and other existing or proposed recreational uses of the same or neighboring public lands, and to ensure the compatibility of such uses with existing conditions in populated areas, taking into account noise and other factors.

"(d) Areas and trails shall not be located in officially designated wilderness areas or primitive areas. Areas and trails shall be located in natural areas only if the authorized officer determines that off-road vehicle use in such locations will not adversely affect their natural, esthetic, scenic, or other values for which such areas are established."

43 CFR § 8342.1 (emphasis added).

The essence of plaintiffs' claim is that the route approval criteria for Class L areas found in the Plan are inconsistent with the above-quoted regulations, and with E.O.

---

"(4) Areas and trails shall not be located in officially designated Wilderness Areas or Primitive Areas. Areas and trails shall be located in areas of the National Park system, Natural Areas, or National Wilderness Refuges and Games Refuges only if the respective agency head determines that off-road vehicle use in such locations will not adversely affect their natural, aesthetic, or scenic values."
3 C.F.R. § 332 (1974).

**13.** *See* footnote 4, *ante.*

**14.** The regulations took into account the amendments to E.O. 11,644 effected by E.O. 11,989, 3 C.F.R. 120 (1978). *See* 43 C.F.R. § 8341.2. E.O. 11,989, among other things, amended E.O. 11,644 so as to require *closure* of ORV areas and trails whenever an agency finds that ORV use will cause or is causing "considerable adverse effects." This closure standard is to be distinguished from the initial *designation* criteria set forth in E.O. 11,644 and mirrored in 43 C.F.R. § 8342.1.

11,644. The challenged criteria, which are contained in the MVA element of the Plan, are set forth in the following language:

"Access in Multiple-Use Class L is designated as 'limited to approved routes of travel.' Actual on-the-ground route designation for Class L will be completed within two years after approval of this Plan. Public participation will be a part of the 'route approval' decision process.

"In Multiple-Use Class L areas, vehicle access is limited to only those routes 'approved' and marked as vehicle access routes. Routes not 'approved' for vehicle access in most instances will be obliterated, barricaded, signed, or shown 'closed' on maps. 'Approved' routes will be signed or otherwise marked or mapped so that those routes of travel which are clearly open will be readily identifiable.

"Route Designation Factors—Multiple-Use Class L

"Decisions on approval of vehicle routes for Class L *will be based* on an analysis of each situation, using the following decision criteria:

"(1) Is the route new or existing?

"(2) Does the route provide access for resource use or enjoyment?

"(3) Are there alternate access opportunities?

"(4) *Does the route cause considerable adverse impacts?*

"(5) Are there alternate access routes which do not cause considerable adverse impacts?"

Plan at 91 (emphasis added).

The route designation criteria, as shown above, are presented in such a manner so as to appear to be the exclusive standard pursuant to which route designation decisions are to be made. Concededly, the criteria are phrased in a neutral, interrogative form, such that they do not explicitly require that a route be approved if certain conditions are satisfied. At the same time, however, the criteria do not explicitly *prohibit* route designation in any defined situa-tion. Thus, the Plan criteria would permit agency officials to make route designations without the minimization of environmental impacts and conflicts between uses express-ly required by 43 C.F.R. § 8342.1. Further-more, the criteria, even though neutrally phrased, will very likely lead BLM officials responsible for implementing the Plan to conclude that routes should be approved absent a finding of "considerable adverse impacts." The "considerable adverse im-pacts" standard is qualitatively different than the minimization criteria mandated by § 8342.1 and in practice is almost certain to skew route designation decision-making in favor of ORV use.

Defendants argue that various references in the Plan to E.O. 11,644, E.O. 11,989, and certain BLM regulations make it clear that the BLM does not intend to, or was not authorized to, apply the route selection cri-teria in a manner inconsistent with 43 C.F.R. § 8342.1. However, viewed in the context in which they appear, these refer-ences are not sufficient to counteract the impression, created in the presentation of the route designation criteria quoted above, that those criteria are to be the exclusive bases for route approval decisions. No mention of the executive orders or applica-ble BLM regulations is made in the text surrounding the criteria in the Plan. Fur-thermore, the Court has seen no language anywhere in the Plan which would alert a reader that the criteria presented in the Plan are inconsistent with 43 C.F.R. § 8342.1 or the executive orders. (If any-thing, the impression is given that the crite-ria faithfully implement these pre-existing directives.) Accordingly, I conclude that the Plan, viewed as a whole, is very likely to result in a route selection process which does not comply in significant respects with the express standards set forth in 43 C.F.R. § 8342.1.[15]

## V. SCOPE OF RELIEF

██ Although plaintiffs have requested a writ of mandate compelling federal defend-

**15.** 43 C.F.R. § 8342.1 is a "legislative" rather than "interpretative" rule, and, thus, binding on the BLM. *AMA* at 935.

798

ants to revise the Plan so as to make it consistent with E.O. 11,644 and 43 C.F.R. § 8342.1, the Court concludes that declaratory and injunctive relief alone will be sufficient to adequately protect the interests of both plaintiffs and the public.

Accordingly, for the reasons stated above, the Court will enter judgment declaring that the route selection criteria for Class L areas contained in the Plan are inconsistent with 43 C.F.R. § 8342.1 and, therefore, invalid. The Court further will enjoin federal defendants from approving any route of travel in Class L areas, on either a one-time or permanent basis, without complying with the selection criteria set forth in 43 C.F.R. § 8342.1.