**COMMONWEALTH OF MASSACHU-SETTS, Plaintiff, Appellant,**

v.

**Arthur Hull HAYES, Jr., in his capacity as Commissioner of the Food and Drug Administration, Defendant, Appellee.**

No. 82–1292.

United States Court of Appeals, First Circuit.

Argued Sept. 16, 1982.

Decided Oct. 18, 1982.

---

Sarah E. Wald, Asst. Atty. Gen., Public Protection Bureau, Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Susan H. Frey, Asst. Atty. Gen., Consumer Protection Div., Public Protection Bureau, Boston, Mass., were on brief, for appellant.

George Edelstein, Atty., Dept. of Justice, Washington, D. C., with whom William F. Baxter, Asst. Atty. Gen., Thomas Scarlett, Chief Counsel, Beverly Rothstein, Associate Chief Counsel for Enforcement, Food and Drug Administration, and John J. Powers, III, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, DAVIS *
and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

The Commonwealth of Massachusetts has challenged denial by the Food and Drug Administration of its application for an exemption from federal preemption for two provisions of its laws governing the sale of hearing aids. The district court granted summary judgment upholding the FDA's denial, and the Commonwealth appeals. We find that the agency applied its validly promulgated standards for exemption rationally and with reasoned explanation. We therefore affirm the district court's decision.

## I. *Background*

Pursuant to the Medical Device Amendments to the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 360c–360k, the FDA promulgated regulations governing the labeling and conditions for sale of hearing aid devices in February of 1977. 21 C.F.R. 801.-420–421. The Medical Device Amendments ("the Amendments") expressly preempt any state regulations that are "different from, or in addition to" FDA requirements. 21 U.S.C. § 360k(a). They provide, however, that the FDA "may, by regulation promulgated after notice and opportunity for an oral hearing", exempt from preemption a state or local rule governing medical devices if it is "more stringent" than the federal regulation or "required by compelling local conditions." 21 U.S.C. § 360k(b).[1] The Agency promulgated in 1978 final regulations prescribing standards and procedures for its consideration of applications for exemption from preemption. 21 C.F.R. 808.1–808.35.

In January of 1978 the Commonwealth enacted Mass.Gen.Laws c. 93, §§ 72–74 to regulate the sale of hearing aids in the state. Section 72 of the Massachusetts law is more stringent than the FDA regulations in two respects. The FDA regulations require that a consumer obtain a medical evaluation from a physician before purchasing a hearing aid but allow an adult to waive that requirement after being advised that the FDA has determined that medical evaluation is in his best health interest. 21 C.F.R. 801.421. The Massachusetts statute prohibits waiver unless a person's religious beliefs preclude consultation with a physician. The Massachusetts statute, unlike the FDA regulations, also requires a "hearing test evaluation" by a physician or audiologist.

The Commonwealth applied for exemption from preemption for § 72 in June of 1978. The FDA published a proposed denial of exemption in April of 1979. After a public hearing and receipt of comments from interested persons, it issued a final rule in October of 1980, denying exemption for § 72 except to the extent that it requires a hearing test evaluation for a child under the age of 18. Massachusetts challenges that denial on two bases: (1) the FDA regulation establishing standards for consideration of exemption from preemption is invalid because it exceeds the agency's statutory authority; (2) the FDA applied its standards in an arbitrary and capricious manner when it denied the Commonwealth's application.

## II. *The FDA's Standard for Consideration of Exemption*

The Commonwealth argues that 21 C.F.R. 808.25(g)(3) establishing standards for ex-

---

\* Of the Federal Circuit, sitting by designation.

**1.** Section 360k(b) reads in full:

"Upon application of a State or a political subdivision thereof, the Secretary may, by regulation promulgated after notice and opportunity for an oral hearing, exempt from subsection (a) of this section, under such conditions as may be prescribed in such regulation, a requirement of such State or political subdivision applicable to a device intended for human use if—

(1) the requirement is more stringent that [sic] a requirement under this chapter which would be applicable to the device if an exemption were not in effect under this subsection; or

(2) the requirement—

(A) is required by compelling local conditions, and

(B) compliance with the requirement would not cause the device to be in violation of any applicable requirement under this chapter."

emption from preemption is inconsistent with Congressional intent. That subpart reads in full:

"The Commissioner may not grant an application for an exemption from preemption for any requirement with respect to a device if the Commissioner determines that the granting of an exemption would not be in the best interest of public health, taking into account the potential burden on interstate commerce."

Among the factors contemplated by the agency in determining whether an exemption will be in the best interest of public health are "additional cost to consumer" and "availability of needed products." 43 Fed.Reg. 18661, 18664 (response to comments on proposed procedures for consideration of applications for exemption). The Commonwealth argues that the FDA has, through 808.25(g)(3), subordinated the standards specifically established by Congress— that the state requirement be "more stringent" or "compell[ed] by local conditions"— to its idea of "public health", and has thus exceeded its statutory authority.

■ We note first that the Commonwealth made no comment on or objection to 808.25(g)(3) before its final promulgation. We agree with those courts that have held that a party aggrieved by an agency ruling is not estopped from challenging the validity of an agency standard that it has not objected to at the time of its promulgation. See City of Seabrook v. EPA, 659 F.2d 1349, 1360–61 (5th Cir. 1981) (party wishing protection from arbitrary agency action need not become "faithful reader of the notices of proposed rulemaking"); Dobbs v. Train, 409 F.Supp. 432 (S.D.N.Y.1975) (rule would estop "vast majority of potential litigants"). We note, however, that unlike the litigants in those cases, the Commonwealth had actual notice of rulemaking. Furthermore, the

Commonwealth did not question the validity of 808.25(g)(3) in administrative hearings on its own application for exemption.

"Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." United States v. Tucker Truck Lines, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952).

See also Bradley v. Weinberger, 483 F.2d 410, 415–17 (1st Cir. 1973); Getty Oil Co. v. Andrews, 607 F.2d 253, 256 (9th Cir. 1979); Dobbs v. Train, supra, 409 F.Supp. at 435 (courts will not entertain objections to standards not made in agency proceedings). We would hesitate, therefore, to declare 808.25(g)(3) invalid even if it were clearly beyond the agency's statutory authority.[2]

Because we find that the agency was well within its discretion, however, we need not deal with that tension between procedural and substantive shortcomings. The agency's statutory authority to grant exemption from preemption is plainly discretionary. "Upon application of a State . . . the Secretary *may* by regulation promulgated after notice and opportunity for an oral hearing, exempt from [preemption], *under such conditions as may be prescribed in such regulation,* a requirement of such state." 21 U.S.C. § 360k(b) (emphasis added). In promulgating 808.25(g)(3), the agency did no more than ground that discretion in the overriding purpose of the Amendments, which was "to protect the public health" by "assur[ing] the safety and effectiveness of medical devices", S.Rep.No.94–33, at 51, *reprinted in* 1976 U.S.Code Cong. & Ad.News 1070, 1103, while accommodating the purpose of the preemption section, which was to prevent an undue burden on interstate

**2.** The Commonwealth argues that in challenging the agency's statutory authority to promulgate 808.25(g)(3) it raises a jurisdictional challenge that can be made at anytime. This argument has no merit. A decision that 808.25(g)(3) is invalid would in no way deprive the FDA of power or jurisdiction to rule upon the application of states for exemption from pre-

emption. Section 360k(b) of the Medical Device Amendments vests that jurisdiction in the agency; challenging the validity of 808.25(g)(3) challenges only the agency's exercise of that jurisdiction. See United States v. Tucker Truck Lines, 344 U.S. 33, 38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952).

commerce through the proliferation of varying state requirements, *see id.* at 1107; H.R.Rep.No.94–853, 94th Cong., 2d Sess. 45 (1976).

■ The Commonwealth argues that considerations of "cost to [the] consumer" and "availability of needed products", incorporated by the agency into its reviewing process through the "best interest of public health" standard, are inconsistent with Congress' purpose to emphasize safety and caution in the marketing of medical devices. In the case of those "dangerous" devices posing "significant health hazards" that were foremost in legislators' minds,[3] *see* S.Rep.No.94–33, *supra,* at 2, erring on the side of restricted availability may indeed be mandated by the Amendments. But in the case of non-dangerous devices such as hearing aids it is eminently reasonable and consistent with overriding public health goals to consider cost and availability when weighing the desirability of additional regulation.[4]

The Commonwealth would, in effect, read § 360k to require exemption from preemption whenever state regulations are "more stringent" and do not unduly burden interstate commerce. But that reading cannot be reconciled with the plainly discretionary language of the section. To argue that such discretion is inconsistent with the intent of the Amendments is anomalous given the broad authority that the Amendments give to the FDA to categorize and regulate the wide variety of marketed medical devices.[5]

■ "[T]he construction of a statute by those charged with its administration is entitled to substantial deference." *United States v. Rutherford,* 442 U.S. 544, 553, 99 S.Ct. 2470, 2475, 61 L.Ed.2d 68 (1979). We agree with the district court that 21 C.F.R. 808.25(g)(3) is reasonably related to the purpose of the Amendments and therefore uphold its validity. *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1660, 36 L.Ed.2d 318 (1973).

### III. *Denial of Massachusetts' Application for Exemption*

■ The Commonwealth contends further that the agency has failed to demonstrate through reasoned explanation a rational basis under its own standards for denying the Commonwealth's application for exemption, and that the denial is therefore arbitrary and capricious. We review the agency's denial only to determine that it is rationally supported, and if it is we will uphold it even if we would have reached a different result.

---

**3.** Of primary concern to legislators in enacting the Amendments were devices, such as IUDs, that had proved life threatening.

"On January 28, 1975, the Health Subcommittee conducted a hearing which once again underlined the urgency of enacting medical device legislation. The hearing focused on the Dalkon shield, an IUD which was used by two million American women, and hundreds of thousands of women overseas, before the very significant health hazards of the device became known. All witnesses before the Commissioner of the Food and Drug Administration, testified that many of the deaths and much of the illness attributed to this device could have been prevented if medical device legislation, as provided in the reported bill, had been in effect when the Dalkon shield was developed.... Medical device legislation is intended to assure that medical devices such as these IUD's meet the requirements of safety and effectiveness before they are put in widespread use throughout the United States." S.Rep.No. 94–33, *supra,* at

1–2, U.S.Code Cong. & Admin.News 1976, 1071.

**4.** The Commonwealth cites *American Textile Manufacturer's Inst., Inc. v. Donovan,* 452 U.S. 490, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981) for the proposition that an agency cannot use cost/benefit analysis absent Congressional intent that it do so. Its reliance on that case is misplaced. The Court there held only that the statute in question, § 6(b)(5) of the Occupational Safety and Health Act of 1970, did not *require* that the agency (OSHA) do cost/benefit analysis.

**5.** *See* 21 U.S.C. § 360c (Secretary's authority to classify and develop standards for medical devices intended for human use). The legislative history expresses the intention "to be sure that the FDA has the proper authority to regulate [the process of development of medical devices] so that Americans are not put at risk from the use of unsafe and ineffective medical devices." S.Rep.No. 94–33, *supra,* at 2, U.S. Code Cong. & Admin.News 1976, 1071.

"Under the 'arbitrary and capricious' standard the scope of review is a narrow one. A reviewing court must 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.' *Citizens to Preserve Overton Park v. Volpe,* [401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)]. The agency must articulate a 'rational connection between the facts found and the choice made.' ·*Burlington Truck Lines v. United States,* 371 U.S. 156, 168 [83 S.Ct. 239, 245, 9 L.Ed.2d 207] (1962). While we may not supply a reasoned basis for the agency's action that the agency has not itself given, *SEC v. Chenery Corp.,* 332 U.S. 194, 196 [67 S.Ct. 1575, 1577, 91 L.Ed. 1995] (1947), we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. *Colorado Interstate Gas Co. v. FPC,* 324 U.S. 581, 595 [65 S.Ct. 829, 836, 89 L.Ed. 1206] (1945)." *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285–86 [95 S.Ct. 438, 441–42, 42 L.Ed.2d 447] (1974).

■ Crucial to our review of the rationality of the agency's decision is how we characterize the agency's burden. The Commonwealth argues that because the FDA has not affirmatively found that the Massachusetts statute will increase consumer costs, restrict availability, or unduly burden interstate commerce—factors articulated by the agency as relevant to its "best interest of public health" standard—it has expressed no rational basis for denying exemption. The agency takes the position, however, that additional regulatory requirements must be affirmatively justified as promoting public health if the regulated devices are otherwise safe and effective.

We agree with the agency's statement of the burden. It follows naturally from our affirmation of the agency's statutory grant of discretion and from the structure of § 360k, which preempts *all* state and local requirements "different from or in addition to those" imposed by agency rulemaking, but then gives the agency discretion to grant exemptions through separate rulemaking procedures. Furthermore, what is at issue in stating the burden is the agency's interpretation of its own regulation for consideration of applications for exemption. An agency's interpretation of its own regulation is due great deference. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964). It is "of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).

In denying exemption for the Massachusetts requirement of professional audiological testing for hearing aid purchasers, the agency gave this explanation:

"There is no evidence that only physicians or audiologists are competent to measure hearing loss. Therefore, the agency does not believe that it is appropriate to require a hearing test evaluation by a physician or an audiologist before every sale of a hearing aid. Problems regarding the competency of hearing aid dealers to measure hearing loss . will be adequately addressed by strong State and local licensing provisions." 45 Fed.Reg. 67325 (1980).

It did, however, grant an exemption for the requirement of such testing as it applies to children under the age of 18.

"Audiologists are specially qualified to assist in the language development and social and educational growth of a child with a hearing loss. Consequently, mandatory audiological evaluation of a minor will serve an important public health purpose." *Id.* at 67326.

The agency gave a more complete explanation of its reasoning in a concurrent denial of exemption for parallel requirements in other states.

"After reviewing the conflicting information in the public record regarding the predictive value of audiological testing in

determining whether a patient would benefit from a hearing aid, FDA has concluded that audiological evaluation is not necessary to provide reasonable assurance of the safety or effectiveness of hearing aids. There is no evidence that audiological evaluation reduces or eliminates any risk to health presented by a hearing aid. The primary risk to health presented by hearing aids is the possibility that an unnecessary or only partially effective hearing aid will be substituted for necessary medical or surgical treatment, thus depriving the hearing-impaired patient of the benefit of appropriate diagnosis and care and resulting in a detriment to health. Medical evaluation by a licensed physician will ensure that all medically treatable conditions are accurately identified and properly treated before a hearing aid is bought .... [T]he agency concluded that the requirement of mandatory audiological evaluation would increase the cost of obtaining a hearing aid without providing any conclusive assurance that the patient would benefit for amplification." 45 Fed.Reg. 67326, 67329 (1980).

The agency reached the conclusion that mandatory audiological testing is undesirable despite "conflicting and inconclusive" evidence of "whether mandatory audiological evaluation would increase the cost of a hearing aid." *Id.* In relying in part on "strong state and local licensing provisions", the agency failed to address the fact that Massachusetts has not chosen to adopt such requirements for hearing aid dealers.

██ The Commonwealth, in effect, prefers to regulate audiological testing by requiring that it be performed by professionals rather than by licensing hearing aid dealers, who also perform such testing. The agency, relying largely on its own findings in choosing not to promulgate regulations requiring professional testing, finds uncontradicted its initial conclusion that

such a requirement "could increase the cost of obtaining a hearing aid without providing any conclusive assurance that the patient would benefit from amplification." 44 Fed.Reg. 22120 (1979) (proposed rule on Massachusetts' application for exemption). We agree with the district court that "[s]uch a finding is sufficient to support denial of an exemption from preemption under 21 C.F.R. 808.25(g)(3) for failure to be in the best interest of the public health."

In support of its application for exemption of its more limited provision for waiver of medical evaluation, the Commonwealth argued before the agency that the agency's more liberal waiver provision was being widely abused. Because the Commonwealth failed to document that claim, the agency denied its application for exemption.

"FDA has not been presented with any convincing evidence that the waiver provision is being widely abused by hearing aid dealers. The agency conducted a survey of State officials to determine whether they were experiencing any problems with compliance with the FDA hearing aid regulation. Of the 39 States that responded to the survey, only Massachusetts stated that it had encountered major problems with regard to compliance. However, Massachusetts did not document its assertion. Therefore, FDA is denying exemption from preemption for the Massachusetts waiver provisions." 45 Fed.Reg. 67325 (1980).

The Commonwealth does not argue that there are "compelling local conditions" that make abuse more of a problem in Massachusetts than elsewhere.

██ The agency's allowance in its own regulations for waiver by an informed adult was based on the conclusion that an unwaivable requirement of medical evaluation would limit the availability of hearing aid devices to those who have personal or religious reasons for objecting to medical evaluation,[6] *see* 45 Fed.Reg. at 67330, or for

---

**6.** The agency reasoned that those who object to medical evaluation would also object to the medical treatment it is designed to promote, and that there is no reason to prevent such

individuals from wearing hearing aids, since wearing a hearing aid is not in itself a risk to health.

those who "would have great difficulty in obtaining a medical evaluation due to a lack of a physician in the area", 42 Fed.Reg. 9286, 9292–93 (1977). The Commonwealth does not dispute this premise; indeed, it would allow waiver for those who have religious objections but not for those who have other objections to medical evaluation. The agency's denial of exemption, which preserves waiver for non-religious reasons, is not arbitrary or capricious in the absence of documentation that such waiver has been abused.

■ Because the Massachusetts requirements that were denied exemption were requirements that the FDA had earlier considered and rejected in its own rulemaking, it relied heavily on its initial reasons for rejecting those requirements. The Commonwealth charges that the agency's "best interest of public health" standard is thus "synonymous with what the FDA decides to require on a national level, with virtually no room for deviation." But in the instance of state requirements identical to those that the agency has previously considered and rejected and in the absence of new evidence indicating the desirability of such requirements or their particular efficacy in the state applying for exemption, we cannot say that the agency's reliance on its initial conclusions is inappropriate. Furthermore, the charge that the agency is inflexible or unreasoning in considering applications for exemption is belied by its granting of exemptions for a number of other state hearing aid regulations, *see* 45 Fed.Reg. 67326, 67331–37 (exemptions granted for various hearing aid purchase regulations in Connecticut, Maine, New Jersey, New Mexico, New York, Ohio and Washington), including Massachusetts' requirement of professional audiological testing in the case of children under the age of 18. The FDA's denial of exemption for those regulations

"FDA believes that, before purchasing a hearing aid, all prospective hearing aid users should obtain a medical evaluation of hearing loss to determine whether any conditions exist that could be corrected by medical treatment or surgery. FDA recognizes, however, that the risk to health posed by hearing aids

that it found would not serve "an important public health purpose" is not arbitrary and capricious.

*Affirmed.*

arises from the failure to obtain beneficial medical treatment rather than from wearing a hearing aid. FDA believes that any informed adult who objects to medical evaluation for religious or personal reasons should be permitted to waive the medical evaluation requirement." 45 Fed.Reg. 67325, 67330.