### BIG HORN COAL COMPANY, Petitioner,

v.

### Edward TEMPLE and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

#### No. 85–1232.

United States Court of Appeals, Tenth Circuit.

June 16, 1986.

Barrett, Circuit Judge, specially concurred and filed opinion.

John S. Lopatto, III, of Freedman, Levy, Kroll & Simonds, Washington, D.C., for petitioner.

Diane Hodes, of U.S. Dept. of Labor, Office of the Solicitor, (J. Michael O'Neill, Francis X. Lilly and Donald S. Shire, with her on brief), Washington, D.C., Edward J. Scheunemann, Denver, Colo., and Bruce P. Badley (Badley and Rasmussen) of Sheridan, Wyo., for respondents.

Before BARRETT, McKAY and TACHA, Circuit Judges.

PER CURIAM.

Big Horn Coal Company (Big Horn) petitions this court to review a final order of a Department of Labor Benefits Review Board (Board) affirming an Order of an administrative law judge (ALJ) awarding disability benefits to Edward Temple (Temple), an employee of Big Horn, under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (the Act). Jurisdiction of this court to review the Board's Order arises under 33 U.S.C. § 921(c) as incorporated into the Act by 30 U.S.C. § 932(a).

Temple was employed as a surface coal miner by Big Horn Coal Company of Sheridan, Wyoming, from 1940 until his retirement on January 1, 1978. Before his retirement, Temple filed a claim for benefits under the Act on May 28, 1976. On June 2, 1977, the Department of Labor's Claims Examiner informally denied Temple's claim because neither the X-ray report nor the ventilatory study showed pneumoconiosis under the applicable regulations. (Dir. Exh. 12.)

On March 1, 1978, the Act was amended. The Department of Labor (DOL) re-opened and reviewed Temple's original application under new regulations implementing the 1978 amendments. (Dir. Exh. 3.) On February 8, 1979, the DOL reversed its informal denial and ruled that Temple was entitled to benefits under the Act. (Dir. Exh. 14.) By letter dated February 13, 1979, Big Horn generally controverted Temple's claim and requested a hearing. (Dir. Exh. 16.)

A hearing was held in Sheridan, Wyoming, before an ALJ on July 23, 1980. On January 20, 1981, the ALJ issued a Decision and Order finding that Temple had pneumoconiosis under the interim presumption in 20 C.F.R. § 727.203(a)(3), which provides:

(a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to

pneumonconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

\*    \*    \*    \*    \*    \*

(3) Blood gas studies which demonstrate the presence of an impairment in the transfer of oxygen from the lung alveoli to the blood as indicated by values which are equal to or less than the values specified in the following table....

The ALJ specifically found that "a $P.C.O._2$ of 31 and a $P.O._2$ of 57 at rest and a $P.C.O._2$ of 32 and a $P.O._2$ of 67 upon exercise satisfies the applicable criteria necessary to invoke the presumption contemplated by § 727.203." (R. Vol. I, p. 82).

After finding the "interim presumption" triggered, the ALJ determined whether or not Big Horn had rebutted the presumption under section 727.203(b):

(b) *Rebuttal of interim presumption.* In adjudicating a claim under this subpart, all relevant medical evidence shall be considered. The presumption in paragraph [20 CFR § 727.203(a)] shall be rebutted if:

(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work ...; or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or

(3) The evidence establishes that the total disability or the death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.

20 C.F.R. § 727.203(b). The ALJ ruled that Big Horn failed to rebut the interim presumption under any of these methods. He specifically found as follows:

There can be no question but that this 68-year old retired miner with a long term record of exposure to dust in his many years of coal mine employment has "pneumoconiosis" as that term is defined by § 727.202. Dr. Seymour Thickman testified that Mr. Temple had "pneumoconiosis." Dr. James J. Batty stated that he had "chronic bronchitis." Dr. Frederick A. Mathews, a specialist in Radiology, testified that the films of Mr. Temple's lungs were "compatible with pneumoconiosis." There was no medical evidence that would allow me to find that Mr. Temple did not have "any chronic pulmonary disease resulting in respiratory or pulmonous impairment significantly related, or aggravated by dust exposure in coal mine employment." (§ 727.202.)

The only serious defense to this claim is the employer's contention to the effect that Mr. Temple can still do his usual coal mine work. This only remaining element of an attempted rebuttal of the presumption in claimant's favor was put to rest by the testimony of George Nugent, the General Manager for Peter Kiewit Son's, Inc. (the operator of Big Horn) from 1943 until 1975. Mr. Nugent testified that Mr. Temple was a "working foreman" who could no longer "continue the physical exertion that a person would have being a mine superintendent where you really have to put in a lot of time and a lot of physical effort" (Tr. 81).

(R., Vol. I, p. 83.) The ALJ therefore awarded benefits to Temple and ordered Big Horn to pay them. On February 12, 1981, Big Horn appealed the ALJ's Decision and Order to the DOL's Benefits Review Board. On December 13, 1984, the Board entered its Decision and Order affirming the ALJ.

Big Horn raises several issues in its petition to review the Board's Decision and Order. We need to address, however, only the following dispositive issue: whether the Board erred in approving the ALJ's evaluation of the arterial blood gas tests without considering the effect of altitude, age, and weight.

Big Horn argues that even if the interim presumption is valid, the ALJ failed to con-

sider the rebuttal evidence it offered concerning altitude, age, and weight. Specifically, the ALJ ignored testimony by Dr. Hoyer, a physician who reviewed and commented on Temple's 1979 ABG test results, and whose testimony Big Horn contends rebutted the section 727.203(a)(3) interim presumption. The Director of the Office of Workers' Compensation Programs, DOL (Director) maintains that while the table values in section 727.203(a)(3) are not adjusted for altitude and age, "These factors are, instead, considered on rebuttal, together with all other medical evidence relating to the cause or interpretation of the blood gas test results." (*Director's Response Brief*, p. 8.)

■ The Director concedes that the ALJ erred in failing to consider Dr. Hoyer's analysis on rebuttal: "Dr. Hoyer found that the test did not establish a pulmonary abnormality in light of the post-exercise results, the age of the miner, and the altitude at which the test was performed; Dr. Thickman, in contrast, found that the arterial blood gas test results reflected a significant abnormality. While the Administrative Law Judge erred in failing to consider these conflicting opinions on rebuttal, this error is harmless." (*Director's Response Brief*, p. 17 (footnote omitted).) The Director concludes that this error was harmless because even had the ALJ considered Dr. Hoyer's analysis, his analysis could not legally establish rebuttal. *Id.* Relying on the Benefits Review Board's decision in *Martino v. United States Fuel Co.*, 6 Black Lung Rep. 1–33 (1983), Big Horn argues that the ALJ's failure to consider Dr. Hoyer's testimony as rebuttal evidence is reversible error.

In *Martino*, as in this case, the Board rejected a challenge to the validity and constitutionality of the section 727.203(a)(3) interim presumption because the table standards were not adjusted for altitude. The Board held: "If a blood gas study meets the table standards, then it is qualifying regardless of the altitude at which it was conducted." *Id.* at 1–42. The Board, however, went on to explain that the ALJ

must consider rebuttal evidence regarding the effect of altitude and other factors on the ABG test results:

Although altitude may not be considered for invocation of the presumption, it is nonetheless relevant for rebuttal of the interim presumption. Section 727.203(b) provides that, "[i]n adjudicating a claim under this subpart, *all relevant medical evidence shall be considered.*" 20 C.F.R. § 727.203(b). Blood gas tests are relevant medical evidence because they measure the existence and extent of an impairment in the transfer of oxygen from the lung alveoli to the blood. Because these tests concern impairment, they are particularly relevant to rebuttal pursuant to Section 727.-203(b)(2). This section provides that the presumption shall be rebutted if "[i]n light of all relevant evidence, it is established that the individual is able to do his usual coal mine work or comparable and gainful work ... [.]" 20 C.F.R. § 727.-203(b)(2). The presumption may be rebutted under Section 727.203(b)(2) by proving that the miner's respiratory or pulmonary impairment is either *non-existent or not totally disabling.* ... If a blood gas study produces abnormal results which can be attributed to altitude rather than pathogenic dysfunction, then this evidence is relevant to either the existence or extent of disablity due to a respiratory or pulmonary impairment. Consequently, the effect of altitude on arterial oxygen pressure *is relevant medical evidence which the factfinder must consider if introduced.* ...

\*   \*   \*   \*   \*   \*

The effect of altitude on arterial oxygen pressure is a medical determination which must be made by a physician.... Without a physician's opinion, the factfinder would be unable to make a rational evaluation of the relationship between altitude and the claimant's blood gas test results or draw any inferences from this information concerning the claimant's im-

pairment. It is therefore held that a medical opinion which attributes a claimant's blood gas test results to altitude rather than a pulmonary or respiratory impairment is relevant rebuttal evidence concerning work capability and *must be considered by the factfinder under* Section 727.203(b)(2).

*Id.* at 1–42 to 1–43 (citations and footnotes omitted) (emphasis added).

In *Martino,* the Board required the ALJ to consider rebuttal evidence attributing an ABG test result to altitude or other factors. In this case the Director concedes that the ALJ failed to consider the medical testimony of Dr. Hoyer. Yet the Director argues that the ALJ's failure to consider this testimony was harmless error because Dr. Hoyer's opinion is, by itself, not enough to rebut the interim presumption. The Director, however, cannot deny that the Benefits Review Board has clearly stated that such a medical opinion is significant when evaluated with other evidence and *must* be considered by the factfinder.

■ "Agencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departures." *National Conservative Political Action Committee v. FEC,* 626 F.2d 953, 959 (D.C. Cir.1979). *See also, Midwestern Transportation, Inc. v. ICC,* 635 F.2d 771, 777 (10th Cir.1980). No rational explanation was given by the Board for departing from *Martino.* Therefore, in light of the Board's *Martino* decision, we hold that it was reversible error for the ALJ not to consider Dr. Hoyer's testimony as rebuttal evidence. We decline to determine the proper weight to be given Dr. Hoyer's testimony in the first instance based on the record before us. Under *Martino,* this is the responsibility of the ALJ. We deny enforcement of the Board's Order and remand for further proceedings consistent with this opinion.

ENFORCEMENT DENIED and REMANDED.

BARRETT, Circuit Judge, specially concurring:

I file this special concurrence to address an issue raised on appeal which I believe merits special consideration: the validity of the interim presumption in 20 CFR § 727.-203(a)(3).

Big Horn contends that the interim presumption in 20 CFR § 727.203(a)(3) is invalid because it can be triggered by arterial blood gas (ABG) test results which are neither adjusted for altitude or other factors nor endorsed as reliable by the administering physician. Big Horn's challenge to the interim presumption is that it is arbitrary and capricious as promulgated. This is a procedural challenge which ostensibly resembles a petition to review final agency rulemaking. Under the facts and circumstances of this case, I would reach this issue and hold that Big Horn is barred from bringing such a challenge.

The interim presumption of section 727.-203(a)(3) was promulgated on August 18, 1978, by the Employment Standard Administration, DOL, as an informal rule under 5 U.S.C. § 553. See 43 Fed.Reg. 36,819 (1978). Any person adversely effected by this regulation had sixty days after it was promulgated to file a petition challenging its validity. 30 U.S.C. 811(d). Big Horn, therefore, had the opportunity to challenge the use of raw ABG scores to trigger the interim presumption of section 727.-203(a)(3).

The time limits for reviewing final rules of administrative agencies are jurisdictional in nature and may not be enlarged by the courts. *Natural Resources Defense Council v. NRC,* 666 F.2d 595, 602 (D.C. Cir.1981). The purpose of these time limits is to impart finality into the administrative process, thereby conserving administrative resources and protecting the reliance interests of those who might conform their conduct to the administrative regulation. *Id.* This purpose is not only undermined by considering petitions to review filed after the time period has expired, but also when a final agency rule is collaterally challenged in a subsequent agency action. Therefore, absent exceptional circumstanc-

es [1], I would not consider collateral procedural challenges to final agency actions after the time limit for the courts to review procedural challenges has expired.

Several courts have held that "a party aggrieved by an agency ruling is not estopped from challenging the validity of an agency's standard that it has not objected to at the time of its promulgation." These courts, however, have based their holdings on the failure of petitioner or appellant to object to a proposed rule or regulation before it became final. *Commonwealth of Massachusetts v. Hayes,* 691 F.2d 57, 60 (1st Cir.1982). *See also, City of Seabrook v. EPA,* 659 F.2d 1349, 1360–61 (5th Cir. 1981), *cert. denied,* 459 U.S. 822, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982); *American Motorcyclist Asso. v. Watt,* 543 F.Supp. 789, 795 (C.D.Cal.1982); *Dobbs v. Train,* 409 F.Supp. 432, 434–35 (N.D.Ga.1975), *aff'd sub nom., Dobbs v. Costle,* 559 F.2d 946 (5th Cir.1977). In *Dobbs, supra,* the court set forth its reasoning in permitting the plaintiffs to collaterally attack a rule to which they did not object either during the notice and comment period or during the time period within which to file a petition to review:

> If the failure to participate in the rulemaking process estopped a litigant from bringing suit in court challenging the rule adopted, the vast majority of potential litigants could not sue. All persons would have to be on guard to assure some agency did not promulgate some rule that might some day deny them a benefit to which they otherwise would have been entitled. As the agency herein noted, no one filed any comments to the proposed definition herein questioned. If one accepts the defendants' argument, then there is no one who may now challenge the definition adopted by the agency. That is, since no one participated in the rulemaking process, the rule would not be immune from attack. Such a result is neither desirable, nor is the law....

409 F.Supp. at 435. Other courts which have considered the issue have adopted this reasoning. *See, e.g., City of Seabrook v. EPA, supra,* at 1360–61 ("courts should not generally hold a petitioner estopped from objecting to an agency rule because a specific objection was not made during the notice and comment period. The rule urged by EPA would require everyone who wishes to protect himself from arbitrary agency action not only to become a faithful reader of the notices of proposed rulemaking published each day in the *Federal Register,* but a psychic able to predict the possible changes that could be made in the proposal when the rule is finally promulgated. This is a fate this court will impose on no one.").

The "estoppel rule" rejected in the cases cited above presupposes that a party's objection during the notice and comment period *preserves* his right to contest a promulgated rule either during the sixty-day time limit or collaterally at a later time and failing to so object during the notice and comment period forever waives the party's right to contest the validity of the regulation even within the sixty days normally provided to file a petition to review. This should not be the rule. The rule should be that unless a petitioner can demonstrate that an agency rule is invalid *ab initio* because it is constitutionally infirm or exceeds the agency's statutory authority, the petitioner is estopped from challenging the procedural promulgation of the rule after the time period for filing such a challenge has expired, regardless of whether petitioner objected during the notice and comment period. I base this proposed rule on the principle of finality and the jurisdictional nature of the time limits which Congress enacted for the purpose of permitting a party to challenge the procedural validity of a regulation.

Big Horn's challenge to section 727.-203(a)(3) illustrates the reasons for this rule. Big Horn's challenge to the interim presumption does not depend on the facts

---

**1.** The "exceptional circumstances" to the rule which it proposes is when the rule is invalid *ab* *initio* such as when it is constitutionally infirm or outside the agency's statutory authority.

of this case. Big Horn simply argues that in promulgating the section 727.203(a)(3) ABG presumption, the Secretary failed adequately to weigh and address comments by medical experts offered during the notice and comment period and failed to offer a rational explanation between the facts found and the choices made. Assuming, without deciding, that these allegations are true, a court has no jurisdiction to consider this challenge, which is in effect a petition to review the promulgation of a rule after the sixty-day time period has lapsed. Any objection to procedural defects in the rule's promulgation are waived as Congress has decided by establishing these time limits.

Big Horn summarizes its arguments regarding the validity of the regulation as follows:

> The DOL's references to unnamed medical sources as supporting the § 203(a)(3) ABG standards, the lack of discussion or analysis of the altitude or other ABG variables in the rulemaking announcement, and the Board's *post hoc* reliance on time pressure and alleged complexity do not insulate the DOL's 1978 regulation from overturning on the basis of *Motor Vehicle Mfrs. and Burlington Truck Lines.* The failure of the Secretary of Labor to adjust the 20 CFR § 727.203(a)(3) for altitude, age, weight, and other ABG quality-control variables is arbitrary, capricious and an abuse of discretion, and contrary to the authorizing legislation.

(*Petitioner's Opening Brief,* pp. 30–31.) Big Horn's challenge could have been advanced in 1978 when notice of rulemaking was first published. The "problems" with the promulgation of section 727.203(a)(3) which Big Horn raises were identifiable and should have been addressed in 1978. It is inappropriate to reopen the administrative process on a procedural challenge to the regulation years after the time period for such a challenge has expired. The administrative record regarding section 727.-203(a)(3) is not part of the record on appeal. The regulation has been in effect for several years. Big Horn's challenge is not of constitutional dimension. Although Big

Horn argues, it does not show how the agency exceeded its statutory authority in promulgating the section 727.203(a)(3) interim presumption. Under these circumstances, I would address the issue raised by Big Horn and deny its collateral challenge to the procedural validity of the regulation.