WINCHESTER, J.,
 ¶1 The issue before this Court is whether the Oklahoma Corporation Commission ("the Commission") erroneously withheld funding to be provided to Dobson Telephone Company ("Dobson") pursuant to the provisions of the Oklahoma Universal Service Fund ("OUSF"), 17 O.S.Supp.2016, § 139.106. For the reasons set forth herein, we find that Dobson is entitled to the requested funding.
 

 STATUTORY BACKGROUND
 

 ¶2 In 1996, the U.S. Congress passed the federal Telecommunications Act,
 
 47 U.S.C. §§ 151
 

 et seq
 
 ., in part, to promote a policy of universal service that would provide telecommunication services to consumers all over the country, including "those in rural, insular, and high cost areas." The Act seeks to provide access to services that are "reasonably comparable to those services provided in urban areas and that are available at rates that are reasonably comparable to rates charged for similar services in urban areas."
 
 47 U.S.C. § 254
 
 (b)(3). The Oklahoma Legislature followed suit with its own, complementary Oklahoma Telecommunications Act of 1997 (the "Act"). 17 O.S.2011 and Supp.2016, §§ 139.101
 
 et seq
 
 .
 

 ¶3 Under the state and federal Acts, certain telecommunications providers known as "carriers of last resort" are required to provide, without discrimination, telephone service to any customer requesting it.
 
 See
 

 47 U.S.C. § 201
 
 ; 17 O.S.2011 and Supp.2016, §§ 136 and 138. In addition, the provider must offer the requested services at reasonable and affordable rates in line with those offered in more urban areas even if serving such customers would not be economically sustainable.
 
 See
 

 47 U.S.C. § 202
 
 ;
 
 47 U.S.C. § 254
 
 (b)(3), (g), (i). The purpose of the legislation was to provide affordable and quality primary universal services to all despite the challenges of its accessibility.
 

 ¶4 In an effort to defray the costs of delivering phone service in rural, more remote areas, the federal and state Acts each established a fund to help support eligible service providers. Within Oklahoma's Act, the Legislature created the OUSF to help pay for reasonable investments and expenses incurred by "eligible local exchange telecommunications service providers" in providing primary universal services to customers in rural and high-cost areas "at rates that are reasonable and affordable."
 
 See
 
 17 O.S.Supp.2016, § 139.106 (A), (B), and (G). The OUSF generally provides that an eligible provider "may request funding from the OUSF as necessary to maintain rates for primary universal services that are reasonable and affordable." 17 O.S.Supp.2016, § 139.106 (G). The OUSF is funded by a charge paid by certain telecommunications carriers that have revenues as defined in Section 139.107.
 
 See
 
 17 O.S.Supp.2016, §§ 139.106 (D) and 139.107.
 
 [1]
 

 ¶5 The Commission's rules governing the process for obtaining funding from the OUSF are set out in OAC 165:59, Part 9 and are overseen by the Administrator of the Commission's Public Utilities Division ("PUD"). Under the rules, upon receipt of a request for OUSF funding, the OUSF Administrator reviews the request and, if appropriate, reimburses the provider consistent with the Act. OAC 165:59-7-1(d) and OAC 165:59-3-62(g). Requests for Subsection (G)'s "as necessary" distributions are evaluated through a detailed study and analysis of the "costs of providing primary universal services" as well as potential revenue. 17 O.S.Supp.2016, § 139.106 (H). The review process for claims submitted under Subsection (G) can be time-consuming and tedious, often resulting in a significant delay in receipt of any funds.
 
 [2]
 
 As a result, the Legislature provided a mechanism within the Act that would allow providers in the rural areas quicker access to mandatory payments in certain, limited circumstances. See 17 O.S.Supp.2016, § 139.106(K).
 

 ¶6 Subsection (K)(1)(a) mandates that, if "a Federal Communications Commission order, rule or policy" has the effect of "decreas[ing] the federal universal service fund revenues of an eligible local exchange telecommunications service provider," that provider "shall recover the decreases in revenues from the OUSF." 17 O.S.Supp.2016, § 139.106 (K)(1)(a). Similarly, Subsection (K)(1)(b) provides that, if changes required by "federal or state regulatory rules, orders, or policies" reduce the revenues or increase the costs to an eligible local exchange telecommunications service provider, then that provider "shall recover the revenue reductions or cost increases from the OUSF." 17 O.S.Supp.2016, § 139.106 (K)(1)(b). Under Subsection (K), distributions from the OUSF "shall not be conditioned upon any rate case or earnings investigation by the Commission," but, instead, should be paid in an amount equal to the increase in costs or reduction in revenues. 17 O.S.Supp.2016, § 139.106 (K)(2).
 

 ¶7 The Commissioners are free to approve or reject any determination by the OUSF Administrator. Under the rules, if no one objects to the Administrator's determination, an order approving the funding request is issued by the Commission. OAC 165:59-3-62(j). If, however, a party is not satisfied with the OUSF Administrator's determination, the party may file a request for reconsideration by the Commission and the matter is set for hearing. OAC 165:59-3-62(h) and (i). The
 Commission is the ultimate arbiter of the issues.
 
 See,
 

 Cameron v. Corporation Com'n,
 

 1966 OK 75
 
 , ¶ 29,
 
 414 P.2d 266
 
 , 272 (on appeal from an oil and gas spacing order, the Court noted that regardless of whatever weight the Commission may attach to an examiner's report, "the Commission is the final arbiter of the issues").
 
 See also,
 

 State ex rel. Cartwright v. Southwestern Bell Telephone Co.,
 

 1983 OK 40
 
 , ¶ 32,
 
 662 P.2d 675
 
 , 681 (quoting
 
 Cameron
 
 ).
 

 ¶8 The Commission, by a 2-1 vote, denied reimbursement. Commissioner Dana Murphy, dissenting in each of these companion cases, has stated that although she may not agree with the need for the fund, she feels she must uphold the Legislature's will as long as the fund exists. She dissented to the denial of Medicine Park's request stating that because she didn't believe the majority decision "comports with the Oklahoma Legislature's intent to, in part, provide support to small, rural carriers who have experienced increases in costs as a result of changes required by governmental acts and with the Legislative policy to preserve and advance universal services."
 

 ¶9 In 2014, the Commission denied a request for OUSF funding from Dobson Telephone Company.
 
 See
 

 Dobson Telephone Co. v. State ex rel. Okla. Corporation Comm.,
 

 2017 OK CIV APP 16
 
 ,
 
 392 P.3d 295
 
 . Dobson sought reimbursement, under Subsection (K)(1)(b) of the OUSF, for costs incurred to relocate its telephone facilities as required by the city of Oklahoma City for a street-widening project. Because the request had been issued by the city, and not the county commission or ODOT, the Commission narrowly interpreted the statute and concluded that the Fund was not authorized to pay for such relocation costs.
 

 ¶10 The Court of Civil Appeals found that the Commission's interpretation of the statutory language defeats the purpose of the Fund and is contra to the legislative intent to defray increased costs incurred by eligible telecommunications service providers resulting from government action, no matter the originating government entity.
 
 Dobson Telephone Co. v. State ex rel. Okla. Corporation Comm.,
 

 2017 OK CIV APP 16
 
 , ¶ 21,
 
 392 P.3d 295
 
 , 305. The Commission's Order was vacated and the matter was remanded for further proceedings consistent with the Court of Civil Appeals opinion.
 
 Dobson Telephone Co. v. State ex rel. Okla. Corporation Comm.,
 

 2017 OK CIV APP 16
 
 , ¶ 23,
 
 392 P.3d 295
 
 , 305. This Court approved the case for publication.
 

 FACTUAL BACKGROUND
 

 ¶11 Dobson provides telecommunications services to customers in rural areas of Oklahoma, serving fewer than 75,000 access lines. On May 3, 2016, the Oklahoma Department of Transportation (ODOT) sent a letter to Dobson ordering the relocation of certain telephone lines within a public right-of-way of an ODOT, highway construction project on US-283, in Roger Mills County. Dobson moved the lines as requested for a sum total of $55,032.54. Dobson filed an application with the Commission under the Act's subsection (K)(1)(b) for reimbursement of this amount from the OUSF. Dobson filed its Application on a form created by the Commission and followed the same steps it, and other companies like it, has always undertaken when seeking an OUSF refund.
 

 ¶12 Dobson made detailed, confidential information regarding the project's costs available for inspection to the Commission's OUSF Administrator. This included information regarding the costs incurred, invoices for engineering, equipment and supplies, and internal employee timesheets and wages. The Administrator reviewed Dobson's application, inspected the confidential information and ultimately approved a reimbursement for Dobson in the amount of $54,766.71. It disallowed $265.83 due to a lack of supporting invoices and/or accounting in Dobson's documents.
 

 ¶13 Various competitor telephone companies, collectively known as Sprint for purposes of this appeal, objected and filed a Request for Reconsideration on May 11, 2017. A hearing was held before an ALJ, where the evidence was briefed and summarized, additional testimony was taken, and the objecting parties were permitted to cross-examine witnesses-including the Administrator-and present evidence or argument
 to the contrary. The ALJ agreed that Dobson was an eligible provider,
 
 [3]
 
 that the facilities in question were used in the provision of primary universal services, and that the expenses incurred by Dobson were as a result of a state government mandate. Despite the Administrator's recommendation, and her apparent agreement therewith, the ALJ indicated she was bound by recent Commission rulings in similar cases, made companions hereto, and recommended a denial of Dobson's request.
 

 ¶14 Thereafter, the Commission voted, 2-1, to deny Dobson's request. The two-person majority found that Dobson's request was not sufficiently supported by evidence as the confidential information reviewed by its Administrator was not included in the record before the Commission. The Commission further determined that Dobson failed to prove that the expenditures at issue were necessary to provide primary universal services at a reasonable and affordable rate. Finally, the Commission stated that it was without sufficient information to determine whether the expenses were incurred only for primary universal services.
 

 Section 139.107 provides, in part:
 

 A. The Oklahoma Lifeline Fund (OLF) and the Oklahoma Universal Service Fund (OUSF) shall be funded in a competitively neutral manner not inconsistent with federal law by all contributing providers. The funding from each contributing provider shall be based on the total intrastate retail Oklahoma Voice over Internet Protocol (VoIP) revenues and intrastate telecommunications revenues, from both regulated and unregulated services, of the contributing provider, hereinafter referred to as assessed revenues, as a percentage of all assessed revenues of the contributing providers, or such other assessment methodology not inconsistent with federal law. VoIP services shall be assessed only as provided for in the decision of the Federal Communications Commission, FCC 10-185, released November 5, 2010, or such other assessment methodology that is not inconsistent with federal law. The Commission may after notice and hearing modify the contribution methodology for the OUSF and OLF, provided the new methodology is not inconsistent with federal law.
 

 B. The Corporation Commission shall establish the OLF assessment and the OUSF assessment at a level sufficient to recover costs of administration and payments for OUSF and OLF requests for funding as provided for in the Oklahoma Telecommunications Act of 1997. The administration of the OLF and OUSF shall be provided by the Public Utility Division of the Commission. The administrative function shall be headed by the Administrator as defined in Section 139.102 of this title. The Administrator shall be an independent evaluator. The Administrator may enter into contracts to assist with the administration of the OLF and OUSF.
 

 17 O.S.Supp.2016, § 139.107. "Contributing provider" as that term is used in § 139.107 means "providers, including but not limited to providers of intrastate telecommunications, providers of intrastate telecommunications for a fee on a non-common-carrier basis, providers of wireless telephone service and providers of interconnected Voice over Internet Protocol (VoIP). Contributing providers shall contribute to the Oklahoma Universal Service Fund and Oklahoma Lifeline Fund." 17 O.S.Supp.2016, § 139.102 (8).
 

 Companion Case No. 115,453 involves a request for funds under Subsection (G) while the remaining six, companion cases, including the instant matter, involve requests brought under Subsection (K), set forth more fully herein. Those cases, also decided today, are Case Nos. 116,193, 116,194, 116,214, 116,215, and 116,422.
 

 For purposes of this appeal, it is undisputed that Dobson is an eligible local exchange provider providing primary services to its customers.
 

 ¶15 Dobson appealed, requesting that the Commission's denial be reversed. We retained the matter and made it a companion to Case Nos. 115,453, 116,193, 116,194, 116,214, 116,215, and 116,422.
 

 STANDARD OF REVIEW
 

 ¶16 This Court's review of decisions of the Commission is governed by the Oklahoma Constitution, article 9, § 20, which states as follows, in relevant part:
 

 The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence.
 

 Okla. Const. art. 9, § 20.
 

 ¶17 The issue in this appeal concerns the Commission's legal interpretation of the OUSF statute and the alleged arbitrary and capricious denial of funding in violation of the Oklahoma Constitution. Constitutional implications as well as statutory interpretation dictate our
 
 de novo
 
 review of this case.
 
 Cox Oklahoma Telecom, LLC v. State ex rel. Oklahoma Corp. Comm'n,
 

 2007 OK 55
 
 , ¶ 9, n.17,
 
 164 P.3d 150
 
 , 156. Under the
 
 de novo
 
 standard of review, the Court has plenary, independent and non-deferential authority to determine whether the trial tribunal erred in its legal rulings.
 
 Cox Oklahoma Telecom, LLC v. State ex rel. Oklahoma Corp. Comm'n,
 

 2007 OK 55
 
 , ¶ 9, n.16,
 
 164 P.3d 150
 
 , 156 ;
 
 Neil Acquisition v. Wingrod Investment Corp.,
 

 1996 OK 125
 
 , ¶ 5,
 
 932 P.2d 1100
 
 , 1103 ;
 
 Fanning v. Brown
 
 ,
 
 2004 OK 7
 
 , ¶ 8,
 
 85 P.3d 841
 
 , 845.
 

 ¶18 This Court has found that the Commission's power "must be exercised only within the confines of its limited jurisdiction as provided by the Oklahoma Constitution" and state statute.
 
 [4]
 

 Pub. Serv. Co. v. State ex rel. Corp. Comm'n
 
 ,
 
 1997 OK 145
 
 , ¶ 23,
 
 948 P.2d 713
 
 , 717. The Commission's "power to regulate is not unfettered."
 
 Pub. Serv. Co. v. State ex rel. Corp. Comm'n
 
 ,
 
 1996 OK 43
 
 , ¶ 21,
 
 918 P.2d 733
 
 , 738.
 

 DISCUSSION
 

 ¶19 Under the OUSF, eligible telecommunications providers serving fewer than 75,000 access lines are entitled to recover increases in costs as a result of changes to facilities that are required by state or federal law. 17 O.S.Supp.2016, § 139.106(K).
 
 [5]
 
 It is undisputed that Dobson is an eligible provider under the Act. It is further undisputed that Dobson was required by ODOT to relocate its lines, causing it to incur an increase in costs. The Act mandates that where changes are "required by existing or future federal or state regulatory rules, orders, or policies or by federal or state law," and such changes cause an eligible provider to experience an increase in costs, the provider "
 
 shall recover
 
 " such "cost increases from the OUSF." 17 O.S.Supp.2016, § 139.106(K)(1)(b) (emphasis added). We have interpreted the use of the word "shall" by the Legislature "as a legislative mandate equivalent to the term 'must', requiring interpretation as a command."
 
 Minie v. Hudson,
 

 1997 OK 26
 
 , ¶ 7,
 
 934 P.2d 1082
 
 , 1086. Thus, under the express provisions of the Act, Dobson was entitled to receive reimbursement from the OUSF for these cost increases.
 

 ¶20 In support of its decision to deny Dobson's requested funding, the Commission's majority found that Dobson failed to produce sufficient evidence into the record. Despite acknowledging that its "Administrator was afforded, and took advantage of, the opportunity to perform a 'review of the Application, contractor's invoices, internal invoices, construction drawings, pre-engineering plans, work orders, plans and maps, timesheets, reimbursement checks, contracts, responses to data requests, relevant Oklahoma Statutes,' its own administrative rules regarding the OUSF," the Commission ignored the Administrator's finding that the documents provided by Dobson supported its request for funding.
 
 [6]
 
 The Commission complained that it was limited to a mathematical review as many of the documents relied on, and reviewed by, the Administrator occurred on-site at Dobson's place of business and were not made publicly available due to the confidential nature of the documents.
 

 ¶21 Dobson points out that up until the filing of these companion cases, the Commission had for years previously accepted the Administrator's review of confidential documents on site. Dobson maintains that they should not be penalized for the Commission's option not to take advantage of the opportunity to review, or even request to review, any of the confidentially-redacted documents. Dobson also cites cases supporting the proposition that long-standing actions or interpretations by an agency will not be idly cast aside without proper notice to affected parties.
 
 See, e.g.,
 

 Oral Roberts Univ. v. Okla. Tax Comm'n
 
 ,
 
 1985 OK 97
 
 , ¶ 10,
 
 714 P.2d 1013
 
 , 1015 (Courts are reluctant to overturn long standing construction where parties having great interest in such construction will be prejudiced by its change);
 
 Big Horn Coal Co. v. Temple
 
 ,
 
 793 F.2d 1165
 
 , 1169 (10th Cir. 1986) ("Agencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departures.").
 

 ¶22 The Administrator agreed with Dobson that the standard procedure followed by the Commission had always been for an applicant to fill out a Commission-approved form and make confidential information supporting its application available for the Commission to review on-site. He offered that this practice occurred not only in OUSF cases, but in numerous other Commission matters. We find the Commission was not entitled to discount Dobson's entire application merely because the documents the Administrator inspected and relied upon for his approval were not publicly filed of record before the Commission.
 

 ¶23 Dobson argues, and the Commission does not dispute, that the Commission's own rules and long-standing practices encouraged applicants to retain its confidential supporting materials on site, making such materials available for review and inspection as needed to support an application. In fact, Commission rule, OAC 165:59-3-72(d), specifically contemplates that "documentation not contained in the public record and not filed in the cause" may nevertheless be "relied upon by the OUSF Administrator in approving or denying an application." The Administrator disclosed that the Commission does not even have procedures in place that would allow it to handle "the responsibility or liability" of receiving such confidential materials.
 

 ¶24 Dobson filed an application, completed by using a Commission-issued form, which certified that as a result of an ODOT mandate to relocate its facilities it incurred an increase in costs in the amount of $55,032.54. The company presented the testimony of a company witness who reviewed all of Dobson's pertinent, confidential materials, and who confirmed the validity of the requested amounts. The Administrator also reviewed the confidential materials and agreed that Dobson's application and documentation supported the relief requested, as nominally modified by the Administrator to a lump sum of $54,766.71. The ALJ-although declining to recommend approval-likewise agreed with both the independent witness and the Administrator that Dobson's application and offered materials supported approval thereof. Despite these findings, the Commission unexpectedly faulted Dobson for failing to publicly submit its confidential materials when documents of such a nature have not been typically filed with the Commission, nor required. Such flawed reasoning should not support a denial of the application herein.
 

 ¶25 Additionally, for the first time in these companion cases, the Commission interpreted Subsection (K) to impose a finding that Dobson's rates for primary universal services are reasonable and affordable pursuant to Subsection (B) and that the requested funding is necessary to maintain such reasonable and affordable rates. As mentioned,
 
 supra,
 
 § 139.106(K)(1)(b) plainly provides that where a provider incurs increased costs due to a state law, order or policy, the provider SHALL recover the cost increase from the OUSF.
 
 See
 
 17 O.S.Supp.2016, § 139.106(K)(1)(b). There is no mention of a condition that the applicant must prove that its rates are reasonable and affordable nor is there a requirement to find the reimbursement necessary to maintain such rates. To the contrary, § 139.106(K)(2) specifically states that an application's approval "shall not be conditioned upon any rate case or earnings investigation by the Commission."
 

 17 O.S.Supp.2016, § 139.106(K)(1)(b). We are not inclined to add requirements to a statute that the Legislature chose not to impose.
 
 See
 

 Pentagon Acad., Inc. v. Indep. Sch. Dist. No. 1 of Tulsa Cty.,
 

 2003 OK 98
 
 , ¶ 19,
 
 82 P.3d 587
 
 , 591 ("It is not the function of the courts to add new provisions which the legislature chose to withhold.");
 
 Minie v. Hudson
 
 ,
 
 1997 OK 26
 
 , ¶ 12,
 
 934 P.2d 1082
 
 , 1087 ("This Court may not, through the use of statutory construction, change, modify or amend the expressed intent of the Legislature.").
 

 ¶26 Dobson contends that the Commission's complete denial of funding disregards the very purpose of the OUSF to ensure the availability of affordable telephone service to customers in rural and high cost areas where, absent the subsidies, their provision would be cost-prohibitive. We agree. The Commission ignores the plain language of the Act and attempts to impose new conditions not required by the Act, nor supportive of its purpose. Generally, applicants who filed under Subsection (K) could expect a quick reimbursement after approval by the Administrator that the application had followed the statutory process. The Commission's in-depth review of a Subsection (K) application would only arise if an outside entity filed a Request for Reconsideration of the Administrator's determination. Where no such reconsideration request is filed, the Administrator's approval, after a proper statutory review, would typically trigger a Commission order granting the applicant's request.
 

 ¶27 The Commission also criticized the fact that the relocated lines were used for services not related to primary universal services. The Commission maintains that Dobson should have allocated the cost of the project between such services. Dobson argues that a request for reimbursement under Subsection (K) does not require any such cost allocation nor has the Commission ever required one in previous Subsection (K) matters.
 

 ¶28 Subsection (K) plainly provides that where a provider incurs cost increases due to a state law or order, the provider SHALL recover the cost increase from the OUSF. 17 O.S.Supp.2016, § 139.106(K)(1)(b). There is no mention of a requirement for cost allocation and we are not inclined to impose such requirement now. The Commission again ignores the plain language of the Act and attempts to impose new conditions not required by the Act, nor supportive of its purpose.
 

 ¶29 Dobson contends that the Commission's complete denial of funding disregards the very purpose of the OUSF to ensure the availability of affordable telephone service to customers in rural and high cost areas where, absent the subsidies, their provision would be cost-prohibitive. We agree. The Commission majority's disapproval of the policy behind the OUSF legislation has no bearing on the validity of an applicant's request for funding. We agree with the dissenting Commissioner that it is our duty to uphold legislation as it is enacted.
 

 CONCLUSION
 

 ¶30 Although the Commission is not bound by the Administrator's recommendation, we find that the record reflects ample evidence with which to support the Administrator's determination. The Administrator, as well as the dissenting Commissioner, both agreed Dobson was entitled to reimbursement of the increased costs it incurred as a result of ODOT's mandate to relocate the telephone lines. The Commission's wholesale denial of Dobson's request was in error. Accordingly, we vacate the order of the Commission and remand the cause for further proceedings consistent with this opinion.
 

 ORDER OF THE OKLAHOMA CORPORATION COMMISSION VACATED AND REMANDED.
 

 CONCUR: GURICH, C.J., KAUGER, WINCHESTER, EDMONDSON, and DARBY, JJ.
 

 CONCURRING SPECIALLY (by separate writing): COMBS, J.
 

 NOT PARTICIPATING: COLBERT, AND REIF, JJ.
 

 The Oklahoma Constitution, art. 9, Section 18 specifies that the Commission has:
 

 the power and authority and [is] charged with the duty of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor, and of correcting abuses and preventing unjust discrimination and extortion by such companies; and to that end the Commission shall, from time to time, prescribe and enforce against such companies, in the manner hereinafter authorized, such rates, charges, classifications of traffic, and rules and regulations, and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just, which said rates, charges, classifications, rules, regulations, and requirements, the Commission may, from time to time, alter or amend.
 

 Subsection 139.106(K) of the Act provides in toto:
 

 K. 1. Each request for OUSF funding by an eligible ILEC serving less than seventy-five thousand access lines shall be premised upon the occurrence of one or more of the following:
 

 a. in the event of a Federal Communications Commission order, rule or policy, the effect of which is to decrease the federal universal service fund revenues of an eligible local exchange telecommunications service provider, the eligible local exchange telecommunications service provider shall recover the decreases in revenues from the OUSF,
 

 b. if, as a result of changes required by existing or future federal or state regulatory rules, orders, or policies or by federal or state law, an eligible local exchange telecommunications service provider experiences a reduction in revenues or an increase in costs, it shall recover the revenue reductions or cost increases from the OUSF, the recovered amounts being limited to the net reduction in revenues or cost increases, or
 

 c. if, as a result of changes made as required by existing or future federal or state regulatory rules, orders, or policies or by federal or state law, an eligible local exchange telecommunications service provider experiences a reduction in costs, upon approval by the Commission, the provider shall reduce the level of OUSF funding it receives to a level sufficient to account for the reduction in costs. 2. The receipt of OUSF funds for any of the changes referred to in this subsection shall not be conditioned upon any rate case or earnings investigation by the Commission. The Commission shall, pursuant to subsection D of this section, approve the request for payment or adjustment of payment from the OUSF based on a comparison of the total annual revenues received from the sources affected by the changes described in paragraph 1 of this subsection by the requesting eligible local exchange telecommunications service provider during the most recent twelve (12) months preceding the request, and the reasonable calculation of total annual revenues or cost increases which will be experienced after the changes are implemented by the requesting eligible local exchange telecommunications service provider.
 

 17 O.S.Supp.2016, § 139.106(K).
 

 The ALJ likewise believed that Dobson was an eligible provider who had provided sufficient documentation to receive OUSF funding. Nevertheless, the ALJ deferred to the Commission rulings in the prior companion cases and recommended denial of the requested funds.
 

 COMBS, J., concurring:
 

 ¶1 I concur in the majority opinion but write separately to emphasize the audacity of the Commission's blanket denial of Appellant's, Dobson Telephone Company, application. The legislature established a process by which a rural provider with limited resources is allowed to be reimbursed from the Oklahoma Universal Service Fund (OUSF) when the rural provider meets increased costs in fulfilling a mandate to provide reliable and affordable telephone service to Oklahomans in remote and underserved areas. The Commission's majority all but ignored the evidence presented ostensibly because of a fundamental disagreement with the Oklahoma Universal Service Fund.
 
 [1]
 
 This is nothing more than an attempt to further disenfranchise rural Oklahoma from basic telephone services.
 

 Appellant's Brief in Chief at 1, March 6, 2018, states "Commissioner Bob Anthony has repeatedly spoken out against the law [Oklahoma Universal Service Fund], even going so far as to ask the Legislature, in writing, to repeal it." He stated the Fund is a bad program that should be repealed. Tr. at 30-31, June 26, 2014, Ok. Sup. Ct. Case No. 113,362. The Brief also states other members of the Commission have expressed their displeasure with the law. Commissioner Murphy, however, dissented against the denial of the request for OUSF funding.